HAMILTON and POSNER, Circuit Judges.
The federal Fair Debt Collection Practices Act (“FDCPA”) requires a collector of consumer debts to file its debt-collection suit in the “judicial district or similar legal entity” where the contract was signed or where the debtor resides. 15 U.S.C. § 1692L This appeal requires us to apply this statutory language to the nine small claims courts in Marion County, Indiana, which together hear some 70,000 civil cases each year. This interpretive issue has significant consequences not only for consumer debtors and debt collectors in Marion County but also for parties to debt-collection suits in other court systems that, depending on the answer to the interpretive question, may be vulnerable to abusive forum-shopping by debt collectors.
Defendant Med-1 Solutions, LLC filed suit in the Pike Township of Marion County Small Claims Court to collect a consumer debt from plaintiff Mark Suesz. The plaintiff alleges that the defendant violated § 1692i by filing in that court because the *638 contract was not signed in Pike Township and the plaintiff does not live there.
In Newsom v. Friedman, 76 F.3d 813 (7th Cir.1996), a panel of this court held that the intra-county districts used to delineate the venue of small claims cases in Illinois’s Cook County Circuit Court were not separate judicial districts for purposes of § 1692i. In this case, the district court and a split panel of this court followed the reasoning of Newsom to hold that the township small claims courts in Marion County are likewise not separate judicial districts; rather, the entire county is the relevant district, giving the debt collector a wide choice of venue. Suesz v. Med-1 Solutions, LLC, 734 F.3d 684 (7th Cir.2013). We granted the plaintiffs petition for rehearing en banc.
We conclude that the correct interpretation of “judicial district or similar legal entity” in § 1692i is the smallest geographic area that is relevant for determining venue in the court system in which the case is filed. See Hess v. Cohen & Slamowitz LLP, 637 F.3d 117, 123-24 (2d Cir.2011). For the small claims courts in Marion County, that smallest area is a township. We therefore reverse the judgment of the district court. We also overrule Newsom, which adopted a test based on details of court administration rather than on the applicable venue rules.
I. The Factual Allegations
Because the district court dismissed this action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, we review its decision de novo and treat as true the factual allegations of the complaint, giving the plaintiff the benefit of favorable inferences from those allegations. E.g., Marshall-Mosby v. Corporate Receivables, Inc., 205 F.3d 323, 326 (7th Cir.2000) (reversing dismissal of FDCPA complaint).
Mark Suesz, who resides in Hancock County, which is immediately east of Marion County, owed money to Community North Hospital. The hospital, which is located in Lawrence Township in the northeast corner of Marion County, turned the debt over to Med-1 Solutions for collection. Med-1 sued Suesz in the Pike Township Small Claims Court. Pike Township is in the northwest corner of Marion County. The court issued a judgment against Suesz for $1,280. The validity of that judgment is not questioned in this federal lawsuit.
Suesz then filed this action under the Fair Debt Collection Practices Act, asserting that Med-1 has a practice of filing collection lawsuits in Marion County in small claims courts located in townships where the debtor defendants neither live nor signed the contracts on which they are being sued. Suesz moved to certify a plaintiff class, but the district court dismissed the case without acting on the motion. On the basis of our decision in Newsom, the district court concluded that the townships of Marion County are not “judicial districts” for purposes of § 1692i and so dismissed Suesz’s suit. Suesz v. Med-1 Solutions, LLC, No. 1:12-cv-1517-WTL-MJD, 2013 WL 1183292 (S.D.Ind. March 21, 2013).
II. The Fair Debt Collection Practices Act
The Fair Debt Collection Practices Act seeks “to eliminate abusive debt collection practices by debt collectors.” 15 U.S.C. § 1692(e); see Muha v. Encore Receivable Mgmt., Inc., 558 F.3d 623, 629 (7th Cir.2009); Jacobson v. Healthcare Financial Services, Inc., 516 F.3d 85, 89 (2d Cir.2008). Consumer debts covered by the Act are usually too small to justify a lawsuit unless the suit is promptly defaulted, thereby enabling the debt collector to obtain — without incurring significant litiga *639 tion cost — a judgment that it can use to garnish the debtor’s wages. Given “the costs of litigation and the difficulties establishing the debt, when a debt collector cannot get payment through phone calls and letters and it has to go to court, the debt collector will often rely on default judgments as the last resort.” O’Rourke v. Palisades Acquisition XVI, LLC, 635 F.3d 938, 940 (7th Cir.2011).
As this case illustrates, one common tactic for debt collectors is to sue in a court that is not convenient to the debtor, as this makes default more likely; or in a court perceived to be friendly to such claims; or, ideally, in a court having both of these characteristics. In short, debt collectors shop for the most advantageous forum. By imposing an inconvenient forum on a debtor who may be impecunious, unfamiliar with law and legal processes, and in no position to retain a lawyer (and even if he can afford one, the lawyer’s fee is bound to exceed the debt itself), the debt collector may be able to obtain through default a remedy for a debt that the defendant doesn’t actually owe.
The FDCPA is designed to protect consumer debtors against unscrupulous methods of consumer debt collection. Thus in Phillips v. Asset Acceptance, LLC, 736 F.3d 1076 (7th Cir.2013), we held that the Act was violated by the disreputable tactic of suing a debtor after the statute of limitations has expired; the debt collector hopes that the debtor will be unaware that he has a complete defense to the suit and so will default, which will enable the debt collector to garnish the debtor’s wages. Abusive forum-shopping is another improper method of collecting consumer debts. Accordingly, the Act provides that unless the debt sued on is secured by real estate, a debt collector can sue to collect it “only in the judicial district or similar legal entity — (A) in which such consumer signed the contract sued upon; or (B) in which such consumer resides at the commencement of the action.” 15 U.S.C. § 1692i(a)(2). (If real estate is security for the loan, the suit must be brought where the property is located, § 1692i(a)(l); that will usually be an advantageous venue from the debtor’s standpoint.) A violation makes the debt collector liable to the debt- or for statutory and actual damages, as well as attorney fees. § 1692k.
Unfortunately the key statutory term— “judicial district” — is vague. The FDCPA does not define it, and as we explain below the phrase has no general definition or meaning that can resolve this dispute. In Indiana, Illinois, and most other states, state trial courts usually are organized by county for purposes of both court administration and venue. When that is so, it may seem natural to interpret the statutory term as referring to the county in which the debtor lives or the contract giving rise to the debt was signed. But terms that seem plain and easy to apply to some situations can become ambiguous in other situations. This statutory term was drafted broadly — indicated by the phrase “or similar legal entity” — presumably so that it could be applied with appropriate flexibility to court systems around the country, which vary in structure and nomenclature. We believe that the term describes the township small claims courts in Marion County, which we examine next with a particular eye to the relevance of venue rules for interpreting and applying the statutory term “judicial district or similar legal entity.”
The alternative approach, favored by the panel majority, would be for the court in an FDCPA case to defer to each state’s definition of “judicial district.” One problem with that approach is that “judicial district” is not a defined term in state law. A deeper problem is that, had Congress been content to adopt the states’ rules governing jurisdiction and venue, there *640 would have been no reason to impose venue limitations on debt collectors, as the federal Act does; the debt collector could have sued wherever state law permitted him to sue. The presence of the venue provision in the Act shows congressional dissatisfaction with allowing state law to determine where suits to collect consumer debts can be filed.
This is not to suggest that the federal law alters state rules governing jurisdiction and venue. Federal law merely imposes a limit on which state courts having jurisdiction and venue over a debt collector’s claim the debt collector may sue in, consistent with the policy of the federal law. There is nothing unusual or untoward about requiring compliance with both state and federal rules. Next we explain why the township small claims courts in Marion County must be regarded as occupying separate judicial districts in order to enforce the policy of the federal law.
III. The Township Small Claims Courts in Marion County
Most trial courts in Indiana are countywide circuit or superior courts of general jurisdiction. The small claims courts serving the nine townships in Marion County (which is coterminous with Indianapolis) are important, high-volume exceptions. Pursuant to the system established by the Northwest Ordinance of 1787, the nearly square county is divided into a grid of nine nearly square townships.
State law makes the small claims courts of Marion Country nine separate courts, each designated the “_ Township of Marion County Small Claims Court,” Ind. Code § 33-34-1-2, the blank being the name of the township in question. Each court has its own judge elected by the voters of the township. § 33-34-2-1. Each court has jurisdiction over civil cases founded on contract or tort in which the debt or damage claimed does not exceed $6,000, exclusive of interest and attorney fees. § 33-34-3-2. The township small claims courts are housed, funded, and staffed by the respective township governments rather than the state or county governments. § 33-34-6-1 et seq. “In essence, the Marion County small claims courts are township-level judicial entities.” In re Mandate of Funds for Center Township of Marion County Small Claims Court, 989 N.E.2d 1237, 1239 (Ind.2013) (resolving disputes between one township court and the township’s governing bodies over court’s funding, location, and administration).
These smaller judicial districts were established for the convenience of litigants and the avoidance of docket congestion, but the panel’s decision gave debt collectors suing in Marion County the choice of which of the nine courts to sue in, just as if the nine were one. The debt collector thus could choose the township court that was most inconvenient for the defendant, friendliest to creditors, or both. To adopt this interpretation would undermine the venue provision of the Fair Debt Collection Practices Act. It would amount to saying that Congress had created the provision with one hand and simultaneously nullified it with the other.
Indiana’s current statute determining venue, Indiana Code § 33-34-3-1, makes venue depend on townships in a small claims suit in Marion County.[1]
*641 When defendant Med-1 Solutions sued plaintiff Suesz in the Pike Township small-claims court, the applicable court rule that had been promulgated by the Indiana Supreme Court provided for broader venue than the current state statute. Small Claims Rule 12 then read in relevant part:
(A) Proper venue. Proper venue for a case filed in the small claims docket of a Circuit, Superior, or County Court shall be in the county where the transaction or occurrence actually took place or where the obligation was incurred or is to be performed, or where one of the defendants resides or has his or her place of employment at the time the complaint is filed.
Proper venue of any claim between landlord and tenant ... filed in county small claims courts created pursuant to IC 33-34-1-2 [i.e., township courts in Marion County] shall be in the county and township division of the Small Claims Court where the real estate is located.
The differences between the venue court rule and the venue statute reflect significant changes in the small claims courts that were made in 1999 to settle a Voting Rights Act lawsuit, but to which the court rules were not conformed until much later.[2]
Before 1999, the small claims courts in the nine townships had been organized as divisions of the Marion Superior Court, and both the venue statute and the venue rule specified venue by township rather than by county only for landlord-tenant claims. For all other cases venue was countywide. The problem under the Voting Rights Act was that the nine judges of those small claims divisions of the Marion Superior Court were each elected by only one township, but all exercised authority over disputes arising throughout the county. The nine townships differed dramatically in terms of overall population and racial composition. The combination of election-by-township and countywide authority substantially diluted the voting power of African-Americans.
After a federal district court denied the defendants’ motion for summary judgment in Anderson v. Mallamad, No. IP94-1447-C H/G, 1997 WL 35024766 (S.D.Ind. March 28, 1997), the parties to the voting *642 rights suit settled by agreeing to the enactment of state legislation that would retain the election of judges by township but make each township court much more independent and — critically for the present case — provide for venue by township. See Ind. Pub.L. 95-1999. Tying together the election district for the judge and the venue of the court provided an arguable justification for what would otherwise have been unacceptable disparities in voting populations in judicial elections. See Houston Lawyers’ Ass’n v. Attorney General of Texas, 501 U.S. 419, 426-27, 111 S.Ct. 2376, 115 L.Ed.2d 379 (1991) (state’s interest in maintaining link between a state district judge’s jurisdiction and the area of residency of his or her voters was a legitimate factor as part of “totality of circumstances” in deciding whether arrangement violated 42 U.S.C. § 1973).
But. even after the 1999 statutory changes a defendant sued in the wrong township court had to appear in that court (within just ten days) in order to move for a change of venue. If he missed the deadline, he was stuck in that court, however inconvenient for him. Moreover, as the panel opinion in this case pointed out, 734 F.3d at 690-91, the 1999 legislation did not make the township small claims courts entirely independent of one another or of the Marion Circuit Court. The circuit judge was required to “extend aid and assistance to the judges in the conduct of the township small claims courts,” Ind.Code § 33-34-1-5, and to “make and adopt uniform rules for conducting the business of the small claims court,” § 33-34-3-6, and was empowered to transfer cases from one township small claims court to another, § 33-34-5-1, and to arrange for the judges of the township small claims courts to substitute for each other with the consent of the respective judges. § 33-34-5-3.
An investigation of the township courts by a task force of two Indiana Court of Appeals judges identified serious venue problems in those courts. Small Claims Task Force, Report on the Marion County Small Claims Courts, pp. 13-14 www.in. gov/judiciary/files/pubs-smelaims-rept-2012.pdf (visited July 2, 2014). Many defendants are unaware of their right to ask the courts to transfer a case to the townships where they live. Id. at 13. And paradoxically, although township courts were intended to be more convenient for parties, they could be less convenient than if the venue were countywide. The combination of the size of the county, the nine court locations, limited public transportation other than to and from the center of the county, and the debt collectors’ ability to file in any township made it harder for many small claims defendants in Marion County to get to court than it was for defendants in counties in which the courts were centrally located. Id. at 14.
The task force also acknowledged concerns that “large-volume filers appear to file their cases in township courts that appear to provide outcomes favorable to them or provide less oversight for settlement negotiations and settlement agreements,” and that townships have an incentive to pressure judges to “favor large-volume filers in order to generate revenue for the township from filing fees.” Id. Without specifically endorsing those concerns, the task force found that judges who “have made efforts to review settlement terms, as opposed to judges who allegedly rubber-stamp settlement agreements, have seen dramatic declines in new filings in their township courts,” as shown by state judicial statistics. Id.
IV. “Judicial District or Similar Legal Entity ”
The key statutory term that we must interpret — “judicial district” — is not a term of art. It has no statutory definition, and it is inherently flexible, enabling it to *643 be adapted to a variety of state court structures.
The few cases dealing with unusual court structures such as found in Marion County or in Cook County, Illinois, take three different approaches to deciding what is a judicial district or similar legal entity. First, in Newsom we relied on what was said to be the plain language of the statute, 76 F.3d at 816-17, though the language is not plain at all when applied to the Marion County township courts. Going beyond the statutory language, a second approach also found in Newsom and in the panel opinion in the present case focuses on a variety of details of internal judicial administration that affect judges and court personnel.
The third approach, which we adopt, focuses on the state court venue rules faced by parties and lawyers, and the relevant geographic unit for applying those rules. Under this approach the relevant judicial district or similar legal entity is the smallest geographic area relevant to venue in the court system in which the case is filed. This interpretation of the statutory term discourages abusive forum-shopping by debt collectors rather than enabling it. In addition to better serving the debtor-protective policy of the FDCPA than the alternative approaches, this venue-based approach should be more predictable and easier to apply than Newsom’s multi-factor test, which requires consideration of numerous details of court administration.
A. Plain Language?
Newsom held that a “municipal department district” of the Cook County Circuit Court in Illinois is not a “judicial district or similar legal entity” under § 1692L A general order of that court had established six geographically distinct “municipal department districts” that would hear civil actions seeking damages not to exceed $80,000, including many consumer debt-collection actions. 76 F.3d at 818. Another court order directed that civil actions be filed in the municipal department district where a defendant resided or the transaction occurred. Id.
Newsom asserted that “judicial district” in the FDCPA has a plain meaning that prevents classifying a “municipal department district” in Cook County as a judicial district. The opinion relied heavily on the edition of a legal dictionary dating from when the FDCPA was enacted, which defined “judicial district” as
one of the circuits or precincts into which a state is commonly divided for judicial purposes; a court of general original jurisdiction being usually provided in each of such districts, and the boundaries of the district marking the territorial limits of its authority; or the district may include two or more counties, having separate and independent county courts, but in that case they are presided over by the same judge.
76 F.3d at 817, quoting Black’s Law Dictionary 848 (6th ed.1990), and noting that the definition in the 4th edition, which was the current edition in 1977 when the FDCPA was enacted, was identical.
For two reasons this dictionary definition does not provide a “plain language” resolution of the issue we face. First, its content is too vague to provide meaningful guidance. Dictionaries can be useful in interpreting statutes, see, e.g., Octane Fitness, LLC v. ICON Health & Fitness, Inc., — U.S. —, 134 S.Ct. 1749, 1766, 188 L.Ed.2d 816 (2014), but judges and lawyers must take care not to “overread” what dictionaries tell us.[3] The *644 most striking features of the dictionary definition in question are its looseness and the inconclusiveness of the component parts of the definition — “circuits or precincts,” “commonly divided,” “usually provided,” and “may include.” Add in the FDCPA’s safety valve — “or similar legal entity” — and the dictionary definition, instead of mandating the decision in New-som, allows ample room for classifying Cook County’s divisional courts and Marion County’s small-claims courts as “judicial districts.”
Second, even if the definition were narrow and specific enough to support New-som and the defendant’s position in the present case, the critical question would be what weight to give it in interpreting the venue provision of the FDCPA. The dictionary definition has no solid basis in law that helps us with our question. Nor is there any link to the enactment of the FDCPA.
A law dictionary differs from an ordinary dictionary, one would suppose, in basing its definitions on legal rather than ordinary usage. So where did Black’s get its definition of “judicial district”? That’s not easy to say. The second edition of Black’s cited at the end of the definition three cases, presumably believed to be the sources of the definition or to explain or illustrate it: Ex parte Gardner, 22 Nev. 280, 39 Pac. 570 (1895); Lindsley v. Board of Supervisors of Coahoma County, 69 Miss. 815, 11 So. 336 (1892); and Commonwealth v. Hoar, 121 Mass. 375 (1876). The third edition added a fourth case, Consolidated Flour Mills Co. v. Muegge, 127 Okla. 295, 260 Pac. 745 (1927), reversed on other grounds, 278 U.S. 559, 49 S.Ct. 17, 73 L.Ed. 505 (1928) (per curiam), while retaining the previous three. The fourth edition retained all four cases. The fifth edition (1979) retained the definition of “judicial district” (unchanged since the second edition), but dropped the citations without explanation.
The later editor may have realized that the four cases cited in the earlier editions did not support the definition. The definition, interpreted as favorably as it could be to the decision in Newsom, might be thought to imply that a judicial district is created by the legislature and encompasses one or more counties. But the dictionary’s case citations undermine that implication. The Lindsley and Hoar cases enforced the division of counties into smaller judicial districts. Consolidated Flour Mills (the only twentieth-century case of the four) rejected a foolish challenge to a court’s power to act after the forum county had been reassigned from one multi-county district to another. The court in that case defined “judicial district” very broadly (semantically, rather than geographically): “The term ‘judicial district’ is but a political and convenient arrangement for electing judges of the district court and prescribing primarily the territorial jurisdiction of the district judge, or where he may lawfully preside without special authority from the Supreme Court.” 260 Pac. at 752. That flexible definition encompasses the divisional courts in Newsom and the township small claims courts in the present case.
Gardner is delphic: “A judicial district is simply a political division, provided for by the constitution, but arranged by the legislature, for the purpose of economizing in the number of judges. In fact, the inclusion of any two counties in the same district may almost be said to be acciden *645 tal.” 39 Pac. at 570. The court did go on to hold (and this part of the holding is echoed in the definition of “judicial district” in Black’s) that even though the two counties’ courts were in the same “judicial district,” “the courts of those counties are still separate and distinct,” and neither could exercise jurisdiction, even with the parties’ consent, over a case brought in the other court. Id. Realistically, then, the two counties in Gardner were separate judicial districts.
The loose definition of “judicial district” in Black’s Law Dictionary thus had no real basis in law, as implied by the editor’s deletion first of the case citations (in the 1979 edition) and finally of the definition itself (in the 1999 edition).
There is also no indication that the drafters of the Fair Debt Collection Practices Act were aware of the dictionary definition, let alone that they viewed it as helpful, particularly in light of the catch-all extension of § 1692i to a “similar legal entity.” The report of the Senate Committee urging adoption of the proposed Act did not mention the definition but instead expressed concern with
the problem of “forum abuse,” an unfair practice in which debt collectors file suit against consumers in courts which are so distant or inconvenient that consumers are unable to appear. As a result, the debt collector obtains a default judgment and the consumer is denied his day in court. In response to this practice, the bill adopts the “fair venue standards” developed by the Federal Trade Commission. A debt collector who files suit must do so either where the consumer resides or where the underlying contract was signed_ The Commission reports that this standard is effective in curtailing forum abuse without unreasonably restricting debt collectors.
S. Rep. 95-382, at 5, 1977 U.S.C.C.A.N. 1695, 1699. The Senate report is entitled to more weight than a vague dictionary entry. Although the report offers no guidance for our case more specific than a reminder of the statutory goal of preventing abusive forum-shopping, that goal deserves great weight in interpreting an uncertain statutory term.
B. The Judicial Administration Approach in Newsom
Newsom did not rely on the statutory language and the law dictionary alone. It also focused on court administration. The opinion recognized that some orders of the Cook County Circuit Court seemed to reflect a venue requirement that small claims cases be filed in particular subdistricts of the county. But relying on another order of that court, the opinion held that the entire county was the relevant judicial district for purposes of venue under the FDCPA. 76 F.3d at 818-19. That second order provided that any case could be assigned to any judge of the court and heard in any courtroom in the county, regardless of where the case had been filed. The order further provided that no action would be dismissed or judgment vacated because the action had been filed or decided in the wrong department, division, or district. Id. at 819. Newsom concluded that what seemed to be venue rules were merely matters of administrative convenience for the unitary Cook County Circuit Court, which had just one chief judge and one administration, and that the boundaries between municipal department districts did not set any territorial limits to the legal authority of the courts sitting in particular districts. Id.
The panel majority in the present case was understandably reluctant, for reasons of stare decisis, to depart from the reasoning of Newsom. The panel opinion thus reasoned that even though the township small claims courts in Marion County had limited venue, the power of each township *646 court to hear a case from elsewhere in the county and the circuit judge’s power to transfer cases and judges among townships made the case similar enough to Newsom, to dictate the same outcome.
But Newsom’s focus on an array of details of judicial administration lost sight of the purpose of § 1692i: to prevent abusive forum-shopping. By treating an entire county as a “judicial district” even though the county has been subdivided into smaller districts for purposes that included delineating the venue of small claims courts, Newsom turned a protection for consumer debtors into a weapon for debt collectors. Where the county courts are in one central location there is at least a reasonably level playing field for both sides in terms of venue. Newsom gave debt collectors new opportunities for forum-shopping. They could choose from among several courts to find one inconvenient for the debtor, friendly to the collector, or both. Cf. Report on the Marion County Small Claims Courts, supra, at 13-14.
The Newsom approach, which is indifferent to distance and inconvenience even where the state courts use smaller units to decide venue, has even graver implications for counties larger than Cook (land area 1635 square miles) or Marion (403 square miles). There are many much larger counties. The area of the nation’s 100th largest county, Eureka County in Nevada, is 4180 square miles — twice the combined area of Cook and Marion Counties. The largest county in the United States is San Bernardino County in southern California. With more than 20,000 square miles, it’s more than twelve times larger than Cook County and almost fifty times larger than Marion County.
Like Cook County, San Bernardino County has divisions, each with its own courts, and like Marion County it has small claims courts. But all the courts are part of the Superior Court of San Bernar-dino County, which corresponds to the Cook County Circuit Court. See Small Claims, Superior Court of California, County of San Bernardino, www.sbeourt. org/Divisions/SmallClaims.aspx (visited July 2, 2014). The logic of Newsom would allow a debt collector to sue a debtor in any court in San Bernardino County, regardless of distance. And distances in San Bernardino County can indeed be long. The county is more than 200 miles from east to west at its widest point, and 150 miles from north to south.
There are differences between the Cook County Circuit Court in Newsom and the township small claims courts in Marion County in terms of judicial administration, as plaintiff Suesz argues. The township small claims courts have greater independence than Cook County’s municipal department district courts, all nine courts having been as we’ve pointed out established as separate courts with separate election districts, administration, staffing, and funding, and even separate seals, and their separate status and the accompanying venue rules having been created in order to remedy a problem of constitutional dimensions under the Voting Rights Act. Our dissenting colleagues do not find these differences persuasive. These special circumstances might enable us to distinguish Newsom’s treatment of the municipal department districts of Cook County. We do not follow that path, however, because the differences in judicial administration between Cook County and Marion County have nothing to do with the purpose of § 1692i in particular or the FDCPA in general.
C. The Venue Approach
Our approach is similar to that of the Second Circuit in Hess v. Cohen & Slamowitz LLP, 637 F.3d 117 (2d Cir.2011). *647 A consumer debt collector had sued a debtor in the Syracuse City Court in New York. The city court lacked power to hear the case because the debtor did not reside in Syracuse or a town contiguous to it, though he did live within the county containing the city court. The city court dismissed the debt-collection suit. The debt- or then sued the debt collector in federal court under the FDCPA. The district court dismissed the case on the theory that the county was the relevant “judicial district,” and the debt collection suit had been filed in the county in which the debtor lived. The Second Circuit reversed. Its decision was based on the applicable venue rules of the court in which the collection case had been filed. Here are the key passages in its opinion:
Because the court system of which [the collector] availed itself is governed by laws that limit the territorial extent of those courts based on, inter alia, a defendant’s contacts with the forum, we hold that those laws delimit the ‘judicial district’ by which compliance with the FDCPA’s venue provisions must be measured.
* * * * * *
Where, as here, a state law outlines the required nexus between the residence or activities of the consumer and the location of the court, we hold that such a law sets forth the appropriate ‘judicial district’ for purposes of the FDCPA with respect to debt collection actions brought in that court, regardless of whether that provision is styled as jurisdictional or otherwise.
637 F.3d at 123, 124.
The court made clear that it was focusing on geographic divisions for purposes of determining venue rather than jurisdiction. The geographic limits of the Syracuse City Court’s power were not jurisdictional, for they could be waived by the parties. See 637 F.3d at 122-24 & n. 4. They were limits on venue, much like the waivable limits on venue in the Cook County municipal department districts in New-som and the Marion County township small claims courts in this case.
Focusing on the geographic unit that is relevant for venue in the court system where the case was filed adapts the FDCPA venue provision in § 1692i to the varied court systems among and within the states. That approach worked in Hess for the city courts in New York and it will work for the township small claims courts in Marion County. It should also work in the huge San Bernardino County, which also uses internal districts for small claims cases. See generally Fox v. Citicorp Credit Services, Inc., 15 F.3d 1507, 1515 (9th Cir.1994) (two Arizona counties were separate judicial districts under FDCPA, even though state had one unitary superior court, where the state provided a formal transfer mechanism between counties); Nichols v. Byrd, 435 F.Supp.2d 1101, 1108 (D.Nev.2006) (finding FDCPA venue violation where suit was filed in a township court in which the debtor did not live and the lease giving rise to the alleged debt had not been signed).
What we are calling the “venue approach” should avoid the confusion that would be likely to result if we distinguished between small claims courts that are divisions of a larger court and those that are independent, or if we relied on an ill-defined mixture of administrative details such as whether cases can be transferred for the convenience of the parties among smaller districts within a county or whether judges can substitute for each other, let alone how the courts are managed, funded, and staffed. Such details are not easy for either debt collectors or debtors to learn, and there is no predictable formula for applying them. But more fundamentally, they have nothing to do with preventing *648 abusive forum-shopping to collect consumer debts.
D. The Relationship Between Federal and State Law
The Fair Debt Collection Practices Act does not tell states how to organize or operate their court systems. Nor does it directly control court procedures such as venue rules. A debt collector for consumer debts may comply with state law, obtain a perfectly valid state court judgment, and simultaneously violate the FDCPA by suing in the wrong venue.
Suppose, for example, that state law allowed venue in the township where the plaintiff does business, and suppose a debt collector filed all its consumer debt collection suits in that township regardless of where the defendants lived or where the contracts giving rise to the alleged debts had been signed. Those suits would comply with state law but would violate the FDCPA. Such violations would not undermine the validity of state court judgments in favor of a debt collector, but they would provide the basis for federal remedies against the debt collector.
In essence, then, the FDCPA takes state courts as states choose to structure and operate them. Section 1692i then provides federal remedies for violations of the new federal requirements for venue in consumer debt-collection cases covered by the federal law. The remedies are available whether or not the filing of the case complies with state law.[4]
At the same time, and for the same reasons, we do not think it matters for purposes of § 1692i whether the state venue rules are established by state statute or court rule (as here), by standing court order (as in Newsom), or by any other mechanism. The relevant judicial district or similar legal entity is the smallest geographic unit relevant for venue purposes in the court system in which the ease was filed, regardless of the source of the venue rules.
One implication of our analysis is that a consumer debt collector filing suit in Marion County still retains a limited choice of venue, at least in theory and as a matter of federal law. The jurisdiction of the township small claims courts over small claims cases is concurrent with the jurisdiction of the county’s circuit and superior courts. Ind.Code § 33-34-3-2. In the circuit and superior courts in Marion County, as in the rest of Indiana, venue is county-wide. If therefore a debt collector chooses to file suit in a circuit or superior court, he could file it in a courthouse in the center of the county. But if the debt collector chooses to file suit in a township small claims court, venue is determined at the township level, thus requiring the debt collector to select a township consistent with the FDCPA’s limitations on abusive forum-shopping.
In practice, though, the potential for confusion or misuse should be minimal. The judges of the circuit and superior courts can transfer any small claims case to an appropriate township small claims *649 court, IncLCode § 33-34-5-2, and this is done routinely. (In fact, despite the concurrent jurisdiction, the clerk of those county courts informs litigants that a case seeking a judgment equal to or less than $6,000 must be filed in a small claims court and that the county clerk’s office does not even support the small claims courts. See Civil Filings: Case Type, City of Indianapolis and Marion County, www.indy.gov/e Gov/County/Clerk/civil/Pages/Case-Types. aspx (visited July 2, 2014).) Also, the civil filing fee in the circuit and superior courts is nearly twice the filing fee for a small claims case ($141 versus $82), and the township small claims courts generally move their civil dockets faster than the circuit and superior courts, which makes the small claims courts more attractive to debt collectors. Again, however, the FDCPA takes the state courts as it finds them.
V. Retroactivity
Our interpretation of § 1692i requires us to reverse the judgment of the district court and to remand for further proceedings on class certification and the merits of plaintiffs claim. But Med-1 Solutions, perhaps seeing the handwriting on the wall, asks that if we overrule Newsom, as we do today, we should do so only on a prospective basis. It argues that debt collectors have relied on Newsom to allow them to choose venue anywhere in the appropriate county.
As a general matter, adopting a new rule while refusing to apply it to the parties before us would raise serious constitutional concerns. We exercise judicial authority rather than the prospective authority of a legislature. See Harper v. Virginia Dep’t of Taxation, 509 U.S. 86, 106, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993) (Scalia, J., concurring) (“The true traditional view is that prospective deci-sionmaking is quite incompatible with the judicial power, and that courts have no authority to engage in the practice.”) (emphasis in original); James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 547, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991) (Blackmun, J., concurring in judgment) (“the nature of judicial review constrains us to consider the case that is actually before us, and, if it requires us to announce a new rule, to do so in the context of the case and apply it to the parties who brought us the case to decide. To do otherwise is to warp the role that we, as judges, play in a Government of limited powers”); Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 379, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981) (no prospective application of jurisdictional rulings).
The Supreme Court has left itself some room to give its rulings in civil cases only prospective effect, at least “to avoid injustice or hardship to civil litigants who have justifiably relied on prior law.” See Harper v. Virginia Dep’t of Taxation, supra, 509 U.S. at 110-13, 113 S.Ct. 2510 (Kennedy, J., concurring in part and concurring in the judgment), quoting American Trucking Ass’ns v. Smith, 496 U.S. 167, 199, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990) (plurality opinion); Felzen v. Andreas, 134 F.3d 873, 877 (7th Cir.1998).
The Supreme Court’s reservation of such a power does not persuade us to make the present decision effective only prospectively; and this for two reasons: First, reliance on prior law is insufficient in itself to justify making a new judicial ruling prospective. See Reynoldsville Casket Co. v. Hyde, 514 U.S. 749, 753-54, 115 S.Ct. 1745, 131 L.Ed.2d 820 (1995) (reversing state court’s decision to give new U.S. Supreme Court ruling only prospective effect). Second, a prior decision of one intermediate appellate court does not create the degree of certainty concerning an issue of federal law that would *650 justify reliance so complete as to justify applying a decision only prospectively in order to protect settled expectations. See Andersortr-Bey v. Zavaras, 641 F.3d 445, 454-55 (10th Cir.2011) (declining to apply new decision only prospectively despite party’s reliance on prior circuit decision); Hawknet, Ltd. v. Overseas Shipping Agencies, 590 F.3d 87, 91 & n. 7 (2d Cir.2009) (same); but see Nunez-Reyes v. Holder, 646 F.3d 684, 690 (9th Cir.2011) (en banc) (giving only prospective effect to new decision conforming circuit law to decisions of other circuits and of the Board of Immigration Appeals). Prospective overruling on reliance grounds is impermissible unless the law had been so well settled before the overruling that it had been unquestionably prudent for the community to rely on the previous legal understanding.
So suppose we affirmed the dismissal of this case and the Supreme Court then granted certiorari and reversed. Neither our prior decision in Newsom nor the panel’s decision in this case would have justified giving the ruling only prospective effect on the basis of justified reliance by (in this case) debt collectors in Marion County-
The judgment of the district court dismissing this action is REVERSED and the case is REMANDED to the district court for further proceedings consistent with this opinion.

. Indiana Code § 33-34-3-1 reads in its entirety:
(a) Except for a claim between landlord and tenant, a case within the jurisdiction of a small claims court may be:
(1)venued;
(2) commenced; and
(3) decided;
in any township small claims court within the county. However, upon a motion for change of venue filed by the defendant within ten (10) days of service of the summons, the township *641 small claims court shall determine in accordance with subsection (b) whether required venue lies with the court or with another small claims court in the county in which the small claims court action was filed.
(b)The venue determination to be made under subsection (a) must be made in the following order:
(1) In an action upon a debt or account, venue is in the township where any defendant has consented to venue in a writing signed by the defendant.
(2) Venue is in the township where a transaction or occurrence giving rise to any part of the claim took place.
(3) Venue is in the township (in a county of the small claims court) where the greater percentage of individual defendants included in the complaint resides, or, if there is not a greater percentage, the place where any individual named as a defendant:
(A) resides;
(B) owns real estate; or
(C)rents an apartment or real estate or where the principal office or place of business of any defendant is located.
(4)Venue is in the township where the claim was filed if there is no other township in the county in which the small claims court sits in which required venue lies.
(c) Venue of any claim between landlord and tenant must be in the township where the real estate is located.
(d) If a written motion challenging venue is received by the small claims court, the court shall rule whether required venue lies in the township of filing.

. Small Claims Rule 12 was amended effective January 1, 2014, to conform the venue requirements for the township small claims courts to the more demanding Indiana statute and to direct the judges of those courts to act sua sponte to order dismissal or a change of venue to a correct township.

. For skeptical views of dictionaries as guides to statutory interpretation, see, e.g., Jordan v. De George, 341 U.S. 223, 234, 71 S.Ct. 703, 95 L.Ed. 886 (1951) (Jackson, J., dissenting) (describing dictionaries as “the last resort of the *644 baffled judge”); Frank H. Easterbrook, Text, History, and Structure in Statutory Interpretation, 17 Harv. J.L. & Pub. Pol’y 61, 67 (1994) ("the choice among meanings [of words in statutes] must have a footing more solid than a dictionary — which is a museum of words, an historical catalog rather than a means to decode the work of legislatures”).

. The prospect that a venue choice could comply with state law while violating federal law does not depend on the size of the judicial district or on how the statutory term is interpreted. That tension is inherent in § 1692i. It would still be present, for example, if state law allowed venue in another county, such as one where the plaintiff does business. The legislative history of the FDCPA states that the venue provision "does not change State or Federal law relating to venue [or] service of process.” H.R.Rep. No. 95-131, at 6 (1977). But the report was merely making clear that the law’s venue requirements would apply only to consumer debt collectors and would not impose broader changes on state venue law.