HAMILTON, Circuit Judge.
We granted en banc review in this case to maintain the uniformity of circuit law and to follow applicable Supreme Court precedent. Under the Fair Debt Collection Practices Act, a debt collector who sues to collect a consumer debt must sue in the “judicial district or similar legal entity” where the debtor lives or signed the contract in question. 15 U.S.C. § 1692i. In Suesz v. Med-1 Solutions, LLC, 757 F.3d 636, 638 (7th Cir. 2014) (en banc), we decided that the “judicial district or similar legal entity” in § 1692i is the smallest geographic area that is relevant for determining venue in the court system in which the suit is filed. That geographic area can be smaller than a county where the court system uses such smaller districts. Suesz overruled our earlier decision in Newsom v. Friedman, 76 F.3d 813, 819 (7th Cir. 1996), in which we had held that for consumer debt collection suits in Cook County, Illinois, the relevant “judicial district” was the entire county and not the smaller municipal districts within the county.
The issue in this appeal is whether a collector of consumer debts that violated the venue provision of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692i(a)(2) (“the FDCPA” or “the Act”), can avoid liability on the ground that it was relying on Newsom as controlling circuit precedent interpreting the statute when it committed the violation. The answer is no.
We decided this question in Suesz when we overruled the circuit precedent in question and declined the defendant debt collector’s request to make that ruling effective only prospectively. 757 F.3d at 649-50. That result is also required by the Supreme Court’s decision in Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 576, 130 S.Ct. 1605, 176 L.Ed.2d 519 (2010), which held that the FDCPA’s statutory safe harbor for bona ñde mistakes does not apply to mistakes of law. Under Suesz and Jerman, the defendant cannot avoid liability for a violation leased on its reliance on circuit precedent or any other bona fide mistake of law. We vacate the judgment of the district court and remand for proceedings consistent with this opinion.
In Part I, we summarize the facts and history of this case. We then review in Part II the venue provision in the FDCPA and in Part III the history of this circuit’s interpretation of the venue provision as applied to small-claims courts in two heavily populated counties in this circuit that have multiple court districts within the counties. In Part IV, we turn to the issue of retroactivity addressed in Suesz, and in Part V we address the issue of mistakes of law addressed in Jerman.
I. Factual and Procedural Background
The relevant facts are not disputed. Plaintiff-debtor Ronald Oliva had a credit card account while he was a student in downtown Chicago and later worked there. Oliva fell behind on the account, and the issuing bank eventually sold the delinquent receivable account to another entity. On behalf of that other entity, the law firm of Blatt, Hasenmiller, Leibsker & Moore, LLC filed a collection suit in 2013 against Oliva in the Circuit Court of Cook County. Oliva v. Blatt, Hasenmiller, Leibsker & Moore, LLC, 185 F.Supp.3d 1062, 1063-64 (N.D. Ill. 2015) (Oliva I). For such relatively small claims, the Circuit Court of Cook County divides the county into six municipal districts for purposes of venue. Blatt Hasenmiller filed the suit against *495 Oliva in the first municipal district in downtown Chicago.
At the time, Oliva did not reside in the first municipal district. Under our decision in Newsom, Blatt Hasenmiller’s choice of venue in the first municipal district within Cook County was not required by the FDCPA but was permissible. While the Oliva action was pending, however, we issued our Suesz decision on July 2, 2014. Eight days later, Blatt Hasenmiller voluntarily dismissed the suit against Oliva and refunded the appearance fee that Oliva’s attorney had paid.
Later in 2014, Oliva filed this federal lawsuit under the FDCPA alleging that Blatt Hasenmiller had violated the Act’s venue provision, § 1692i, by suing him in a venue where he did not reside and had not signed the contract in suit. 185 F.Supp.3d at 1064. The parties filed cross-motions for summary judgment. The district court granted Blatt Hasenmiller’s motion and denied Oliva’s motion. The district court held that Blatt Hasenmiller had shown that its violation of the venue provision in § 1692i was the result of a bona fide error in relying on circuit precedent. The court rejected Oliva’s argument that Suesz should apply to Blatt Hasenmiller’s suit against him.[1]
On Oliva’s appeal, a panel of this court affirmed. Oliva v. Blatt, Hasenmiller, Leibsker & Moore, LLC, 825 F.3d 788 (7th Cir. 2016) (Oliva II). The panel concluded that the- retroactivity holding in Suesz should not be applied because Blatt Ha-senmiller was entitled to the safe harbor for bona fide mistakes in § 1692k(c). Id. at 791-92. The panel also found that the Supreme Court’s opinion in Jerman, holding that the bona fide error safe harbor in § 1692k(c) did not apply to mistakes of law, did not extend to mistakes of law based on controlling circuit precedent. Id. Oliva petitioned for rehearing en banc under Federal Rule of Appellate Procedure 35. He argued that the panel decision conflicted with both our earlier en banc decision in Suesz and the Supreme Court’s decision in Jerman. We granted his petition. Because the issues were presented sufficiently in the briefs and opinions under review, we elected not to schedule a further oral argument in this case.
II. Venue Under the Fair Debt Collection Practices Act
The Fair Debt Collection Practices Act seeks “to eliminate abusive debt collection practices by debt collectors.” 15 U.S.C. § 1692(e) (congressional purposes). One such practice is abusive forum-shopping by debt collectors choosing the venues for lawsuits to collect consumer debts. The Act requires:
Any debt collector who brings any legal action on a debt against any consumer shall—
(1) in the case of an action to enforce an interest in real property securing the consumer’s obligation, bring such action only in a judicial district or similar legal entity in which such real property is located; or
(2) in the case of an action not described in paragraph (1), bring such action only in the judicial district or similar legal entity—
(A) in which such consumer signed the contract sued upon; or
(B) in which such consumer resides at the commencement of the action.
15 U.S.C. § 1692i(a).
Since the debt here was not secured by real property, our focus is on *496 paragraph (a)(2), which requires the debt collector to file a collection suit in a venue where the consumer debtor either signed the relevant contract or resides. The provision should prevent debt collectors from choosing venues that are inconvenient for the debtor and/or particularly friendly to the debt collector. The Act’s venue provision applies even where the debt collector’s venue selection is permissible as a matter of state law. Suesz, 757 F.3d at 648; id. at 653 (Sykes, J., concurring) (as applied to debt collection actions in state court, “§ 1692i must be understood not as a venue rule but as a penalty on debt collectors who use state venue rules in a way that Congress considers unfair or abusive”).
III. FDCPA Venue in the Seventh Circuit
In the three states in this circuit, almost all state trial courts are organized county by county, so the relevant “judicial district or similar legal entity” under § 1692i is ordinarily a county. The sticky issue has been the meaning of “judicial district or similar legal entity” in counties that divide their small claims courts among court subdivisions that are smaller than the entire counties. These are Cook County, Illinois (Chicago), and Marion County, Indiana (Indianapolis).
In Newsom, we held that municipal department districts of the Circuit Court of Cook County were not “judicial districts” under § 1692i(a), and that the relevant “judicial district” for Cook County was the entire county. 76 F.3d at 819. The practical effect of that decision was to allow debt collectors in Cook County to choose freely among the six different municipal department districts, at, least as far as the FDCPA was concerned. In the wake of Newsom, debt collectors in Cook County could file collection suits in municipal department districts that were distant from the consumers’ residence or the location where the. relevant contract was. signed.
In 2014, however, we revisited the venue issue in a case dealing with the nine township small-claims courts in Marion County, Indiana, in Suesz, 757 F.3d 636. In Suesz, we overruled Newsom and held that- a “judicial - district or similar legal entity” under § 1692i is “the smallest geographic area that is relevant for determining venue in the court system in which the case is filed.” Id. at 638. That meant in Suesz itself that a collection suit filed in a township other than where the consumer resided or the contract was signed violated the Act.
The reasoning and holding of Suesz clearly extend to the municipal department districts in Cook County, Illinois. It appears that collectors of consumer debts in Cook County quickly adapted their practices. to comply with Suesz after the en banc decision. This appeal concerns FDCPA claims based on collections suits filed before our en banc decision in Suesz.[2]
*497 IV. Retroactivity ■ Under Suesz
In the en banc briefing in Suesz, the debt collector argued that it and other debt collectors had been relying on our precedent in Newsom to choose preferred venues among the different small claims courts within the cpunty. It argued that if we were to overrule Neivsom, we should give that decision only prospective effect. We rejected that argument, holding that the new rule adopted in Suesz would apply in Suesz itself. 757 F.3d at 649-50.
The general rule, we explained, is that judicial decisions are given retroactive effect/ unlike legislation, which ordinarily is not. We acknowledged that the Supreme Court-has left itself some room to give its rulings in civil cáses only prospective effect “to avoid injustice or hardship to civil litigants who have justifiably relied on prior law.” Id. at 649, quoting Harper v. Virginia Dep’t of Taxation, 509 U.S. 86, 110, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993) (Kennedy, J., concurring in part and concurring in the judgment), quoting in turn American Trucking Ass’ns v. Smith, 496 U.S. 167, 199, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990) (plurality opinion), and endorsing Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). We were not persuaded to impose a prospective-only rule in Suesz. We noted that the Supreme Court had reversed a state court’s decision to give a United States Supreme Court decision only prospective effect. Suesz, 757 F.3d at 649, citing Reynoldsville Casket Co. v. Hyde, 514 U.S. 749, 753-54, 115 S.Ct. 1745, 131 L.Ed.2d 820 (1995). We also observed that a prior decision of one intermediate appellate court does not ordinarily produce the degree of certainty concerning an issue of federal law that might justify a rare prospective-only ruling. We said that a prospective-only ruling would be “impermissible unless the law had been so'well settled before the overruling that it had been unquestionably prudent for the community to rely on the previous legal understanding.” Id. at 650.
To illustrate the point, we considered a different scenario, one.in which we as a circuit court of appeals had continued to follow Newsom but the Supreme Court had granted certiorari in Suesz and reversed. Neither our prior decision in New-som nor the panel’s decision. in Suesz, we said, would have justified the Supreme Court giving its decision only prospective effect. Id. Also, the Supreme Court’s FDCPA decisions against debt collectors have not given any sign of applying their holdings only prospectively. See Jerman, 559 U.S. 573, 130 S.Ct. 1605; Heintz v. Jenkins, 514 U.S. 291, 294, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995) (Act applies to lawyers collecting debts through litigation).
The. panel opinion in this case declined to apply the Suesz holding on retroactivity. The panel wrote that Suesz “did not specify the scope of its retroactivity,” but the panel assumed without deciding that the Suesz retroactivity holding would apply to the debt collector in this case. Oliva II, 825 F.3d at 790-91. The panel in this case then considered the FDCPA safe harbor for good-faith mistakes under § 1692k(c), which .had. not .been argued in Suesz.[3] We turn to that rationale next.
*498 V. Jerman and Good-Faith Mistakes of Law
The FDCPA provides a private right of action for persons whose rights under the Act are violated. 15 U.S.C. § 1692k. Remedies include actual damages, statutory damages up to $1000 per violation, and attorney fees. The Act also provides a safe harbor, a defense that bars liability “if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.” § 1692k(c). Blatt Hasenmiller has argued, and the district court and panel agreed, that this safe harbor protected it from liability because it relied in good faith upon our precedent in Newsom in choosing venue for its collection suit against Oliva.
The Supreme Court decided Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA to resolve a circuit split as to whether the Act’s safe harbor applies to debt collectors’ good-faith mistakes of law. 559 U.S. at 580-81, 130 S.Ct. 1605. In Jerman, the debt collector had sent a notice to the debtor saying that the debt would be assumed to be valid unless she disputed it in writing. For purposes of the Supreme Court litigation, the Court assumed that the debt collector had violated § 1692g by telling the debtor that she would have to dispute the validity of the debt in writing. Id. at 580 n.3, 130 S.Ct. 1605. The Supreme Court held that § 1692k(c) does not apply to errors of law in interpreting the Act. The Court stated its holding as follows: “We therefore hold that the bona fide error defense in § 1692k(c) does not apply to a violation of the FDCPA resulting from a debt collector’s incorrect interpretation of the requirements of that statute.” Id. at 604-05, 130 S.Ct. 1605.
The panel in this case concluded that Jerman did not bar Blatt Hasenmiller’s defense under § 1692k(c). The panel read the Jerman holding narrowly, as applying only to the debt collector’s own mistaken interpretation of the law but not to reliance on a precedent that was later overruled as mistaken. Oliva II, 825 F.3d at 792. In other words, a debt collector could rely on a court’s, or at least an appellate court’s, mistaken interpretation of the Act. The panel also said that even if the distinction between a court’s interpretation and a debt collector’s interpretation does not hold up, the debt collector’s interpretation was not mistaken when it was made. Id.
With respect, we do not read Jerman so narrowly. We see no indications that the Couit intended to allow § 1692k(c) to protect some mistakes of law about the Act but not others. The opinion includes no indication of how courts might distinguish between protected and unprotected mistakes of law, nor do we see a workable line between protected and unprotected mistakes of law.
There are also clear signs in Jerman that the Court was reaching all mistaken interpretations of the Act, regardless of how understandable or reasonable they might have been. For example, the Jer-man dissent argued that the majority’s decision would have unworkable consequences for attorneys collecting debts, requiring an attorney to resolve legal ambiguities against her client “even where there is substantial legal authority for a position favoring the client.” 559 U.S. at 597, 130 S.Ct. 1605, citing id. at 619-24, 130 S.Ct. 1605 (Kennedy, J., dissenting). The Jerman majority was not persuaded to make an exception for mistakes sup *499 ported by “substantial legal authority.” Id. at 597, 130 S.Ct. 1605. That logic fits this case unless there is a manageable way to distinguish between mistakes supported by “controlling” legal authority and those supported by “substantial” legal authority. We do not see one, and the panel and dissent do not offer one for purposes of Jerman and § 1692k(c). Nor has any other circuit tried to confine Jerman as the panel did here.
Also relevant to the scope of Jerman, the Court pointed out that Congress had included in § 1692k an additional safe harbor for a debt collector who seeks and follows an advisory opinion from the Federal Trade Commission’s Bureau of Consumer Protection:
No provision of this section imposing any liability shall apply to any act done or omitted in good faith in conformity with any advisory opinion of the Bureau, notwithstanding that after such act or omission has occurred, such opinion is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.
§ 1692k(e). The Court found that the inclusion of the safe harbor for FTC advice was inconsistent with a broad defense for good-faith mistakes of law:
Debt collectors would rarely need to consult the FTC if § 1692k(c) were read to offer immunity for good-faith reliance on advice from private counsel. Indeed, debt collectors might have an affirmative incentive not to seek an advisory opinion to resolve ambiguity in the law, as receipt of such advice would prevent them from claiming good-faith immunity for violations and would potentially trigger civil penalties for knowing violations under the FTC Act.
559 U.S. at 588, 130 S.Ct. 1605. That analysis is surely correct as a practical matter. See also id. at 605-06, 130 S.Ct. 1605 (Breyer, J., concurring) (emphasizing the safe harbor for FTC advice as solution for legal uncertainty).
Jerman recognized the issue it was deciding is important for effective enforcement of the FDCPA. It is important because there is so much room to argue different interpretations of the FDCPA. A broad exception for good-faith legal errors (akin to a qualified immunity defense under 42 U.S.C. § 1983) would allow debt collectors to resolve all legal uncertainty in their own favor, at least as long as they consulted a lawyer. See Jerman, 559 U.S. at 601-02, 130 S.Ct. 1605. The result would be to give “a competitive advantage to debt collectors who press the boundaries of lawful conduct,” inviting a “race to the bottom” driving more conservative collectors out of business and running directly contrary to the overall purpose of the Act. Id. at 602, 130 S.Ct. 1605.
As we read the Jerman opinion, the Court chose to avoid that result by rejecting application of § 1692k(c) to any legal errors concerning the FDCPA. In essence, the Court read the Act as putting the risk of legal uncertainty on debt collectors, giving them incentives to stay well within legal boundaries. And along these lines, it is worth remembering that nothing in Newsom or the Act required Blatt Hasen-miller to sue in the venue it chose. Jerman and our interpretation of § 1692k(c) do not nullify the statutory defense but confine it to factual and clerical errors. See Jerman, 559 U.S. at 587, 130 S.Ct. 1605.[4]
*500 We must still acknowledge, of course, that if any mistaken interpretations of the Act were made in good faith, it was in cases like this, Debt collectors in Cook County relied on circuit precedent in believing they could choose freely among the districts within the county in filing debt collection suits. Our colleagues in dissent make that point with strong language. But as we pointed out above and in Suesz, suppose. the overruling of Neivsom had come not from this court sitting en banc but from the Supreme. Court. Such a decision would not have needed to overrule any Supreme Court precedent, and there is no reason to think the Supreme Court would have given such a decision only prospective in effect. See Suesz, 757 F.3d at 650. In that situation, the defendant would not be entitled to a safe harbor. We see no reason to distinguish between those two paths to overruling Newsom.
The unstated assumption of the dissent is that a judicial decision is “the law.” With a statute, however, the controlling law is and always has been the statute itself, as enacted by both houses of Congress and signed by the President. One judge or a panel of judges may or may not understand that text correctly, but the statute remains the law even if judges err. That is why overrulings of earlier statutory decisions, like reversals by the Supreme Court, are retroactive. It is also why it makes sense to think of the defendant’s action here as reflecting a mistake of law despite the reliance on admittedly substantial precedent. Defendant was mistaken about the meaning of the statute, and so were the panels in Newsom and Suesz. The fact that different sets of lawyers, ineluding those with judicial commissions, made a legal error does not make it less a legal error.
Nevertheless, in recognition of the equitable points the defendant makes about its reliance on Newsom, it is helpful to recall that the FDCPA provides that, in determining damages for a violation where .the safe harbor is not. available, the court “shall consider, among other relevant factors ... the extent to which such noncom■pliance was intentional.” 15 U.S.C. § 1692(b)(1).
We are aware of one area in the law where reliance on controlling circuit precedent has been given special treatment: an exception from the exclusionary rule under the Fourth Amendment. In United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court recognized an exception to the exclusionary rule for Fourth Amendment violations that resulted from police officers’ reasonable reliance on facially valid search warrants. In Davis v. United States, 564 U.S. 229, 131 S.Ct. 2419, 180 L,Ed.2d 285 (2011), the Supreme Court extended the Leon good-faith exception to searches conducted in objectively reasonable reliance on binding appellate precedent. That unusual rule in Davis.is based on the exclusionary rule’s “high cost to both the truth and the public safety,” and the absence of offsetting benefits resulting from deterring police misconduct when the police are complying with circuit precedent. Id. at 232, 131 S.Ct. 2419. The interest in protecting debt collectors’ choices of venue is not at all comparable to the stakes under the exclusionary rule. We see no reason to create a similar rule under the FDCPA, especially in the face of Jerman’s rejection of mistakes of law as grounds for the safe harbor under 15 U.S.C. § 1692k(c).
The judgment of the district court is VACATED and the case is REMANDED *501 for further proceedings .consistent with this opinion.[5]

. Blatt Hasenmiller had also argued that venue in the first judicial district was proper on the ground that Oliva had signed the relevant contract in that district. The district court did not address that argument, and we leave it for consideration on remand.

. The question presented in this appeal has arisen in a number of similar cases in the Northern District of Illinois. All of the district court decisions on point other than Oliva have ruled in favor of retroactive application of Suesz. See Oberg v. Blatt, Hasenmiller, Leibsker & Moore, LLC, No. 14 C 7369, 2015 WL 9478213, at *4 (N.D. Ill. Dec. 29, 2015) (Kennelly, J.); Desfassiaux v. Blatt, Hasenmiller, Leibsker & Moore, LLC, 142 F.Supp.3d 667, 674 (N.D. Ill. 2015) (Feinerman, J.); Browne v. John C. Bonewicz, P.C., No. 14 CV 6312, 2015 WL 6165033, at *3 (N.D. Ill. Oct. 20, 2015) (Shah, J.); Rowan v. Blatt, Hasenmiller, Leibsker & Moore, LLC, No. 14 CV 08923, 2015 WL 5920873, at *6 (N.D. Ill. Oct. 8, 2015) (Chang, J,); Conroy v. Blatt, Hasenmiller, Leibsker & Moore, LLC, No. 14 C 6725, 2015 WL 5821642, at *4 (N.D. Ill. Oct. 1, 2015) (Hart, J.); Portalatin v. Blatt, Hasenmiller, Leibsker & Moore, LLC, 125 F.Supp.3d 810, 817 (N.D. Ill. 2015) (Kennelly, J.); Mal *497 danado v. Freedman Anselmo Lindberg, LLC, Nos. 14 C 6694, 2015 WL 2330213, at *3 (N.D. Ill. May 14, 2015) (Leinenweber, J.). Other similar cases have failed for separate reasons, though, such as the statute of limitations.

. In the en banc oral argument in Suesz, the debt collector was asked why it did not rely on § 1692k(c) to argue’for prospective-only application if Newsom were to be overruled. Counsel explained, in apparent reference to Jerman, that the Supreme Court had previously held that the safe harbor did not apply *498 to good-faith mistakes of law. Since the party in a position to argue the point had not argued it, we did not address Jerman in the en banc opinion.

. Blatt Hasenmiller has pointed out that the Jerman opinion said it was not addressing the effect of good-faith mistakes about matters of state law. See 559 U.S. at 580 n.4, 130 S.Ct. 1605. From the reservation of that question, Blatt Hasenmiller concludes that not all mistakes of law are excluded from the safe harbor. For the reasons in the text, we think the *500 •reservation of the state-law issue does not signal a willingness to draw fine lines between different mistakes of law concerning the FDCPA itself.

. We do not address here situations in which a debt collector concluded in good faith that the FDCPA required it to act in such a way that a court later determined was prohibited.