In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2516

RONALD OLIVA,

*Plaintiff-Appellant,*

*v.*

BLATT, HASENMILLER, LEIBSKER & MOORE LLC,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:14-cv-06447 — **Elaine E. Bucklo**, *Judge.*

ARGUED NOVEMBER 12, 2015 — DECIDED JUNE 14, 2016
REHEARING EN BANC GRANTED AND SUBMITTED
AUGUST 23, 2016 — DECIDED JULY 24, 2017

Before WOOD, *Chief Judge*, and BAUER, POSNER, FLAUM, EASTERBROOK, MANION, KANNE, ROVNER, WILLIAMS, SYKES, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* We granted en banc review in this case to maintain the uniformity of circuit law and to follow applicable Supreme Court precedent. Under the Fair

Debt Collection Practices Act, a debt collector who sues to col-
lect a consumer debt must sue in the "judicial district or sim-
ilar legal entity" where the debtor lives or signed the contract
in question. 15 U.S.C. § 1692i. In *Suesz v. Med-1 Solutions, LLC*,
757 F.3d 636, 638 (7th Cir. 2014) (en banc), we decided that the
"judicial district or similar legal entity" in § 1692i is the small-
est geographic area that is relevant for determining venue in
the court system in which the suit is filed. That geographic
area can be smaller than a county where the court system uses
such smaller districts. *Suesz* overruled our earlier decision in
*Newsom v. Friedman*, 76 F.3d 813, 819 (7th Cir. 1996), in which
we had held that for consumer debt collection suits in Cook
County, Illinois, the relevant "judicial district" was the entire
county and not the smaller municipal districts within the
county.

The issue in this appeal is whether a collector of consumer
debts that violated the venue provision of the Fair Debt Col-
lection Practices Act, 15 U.S.C. § 1692i(a)(2) ("the FDCPA" or
"the Act"), can avoid liability on the ground that it was rely-
ing on *Newsom* as controlling circuit precedent interpreting
the statute when it committed the violation. The answer is no.

We decided this question in *Suesz* when we overruled the
circuit precedent in question and declined the defendant debt
collector's request to make that ruling effective only prospec-
tively. 757 F.3d at 649–50. That result is also required by the
Supreme Court's decision in *Jerman v. Carlisle, McNellie, Rini,
Kramer & Ulrich LPA*, 559 U.S. 573, 576 (2010), which held that
the FDCPA's statutory safe harbor for bona fide mistakes does
not apply to mistakes of law. Under *Suesz* and *Jerman*, the de-
fendant cannot avoid liability for a violation based on its reli-
ance on circuit precedent or any other bona fide mistake of

law. We vacate the judgment of the district court and remand for proceedings consistent with this opinion.

In Part I, we summarize the facts and history of this case. We then review in Part II the venue provision in the FDCPA and in Part III the history of this circuit's interpretation of the venue provision as applied to small-claims courts in two heavily populated counties in this circuit that have multiple court districts within the counties. In Part IV, we turn to the issue of retroactivity addressed in *Suesz*, and in Part V we address the issue of mistakes of law addressed in *Jerman*.

I.   *Factual and Procedural Background*

The relevant facts are not disputed. Plaintiff-debtor Ronald Oliva had a credit card account while he was a student in downtown Chicago and later worked there. Oliva fell behind on the account, and the issuing bank eventually sold the delinquent receivable account to another entity. On behalf of that other entity, the law firm of Blatt, Hasenmiller, Leibsker & Moore, LLC filed a collection suit in 2013 against Oliva in the Circuit Court of Cook County. *Oliva v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 185 F. Supp. 3d 1062, 1063–64 (N.D. Ill. 2015) (*Oliva I*). For such relatively small claims, the Circuit Court of Cook County divides the county into six municipal districts for purposes of venue. Blatt Hasenmiller filed the suit against Oliva in the first municipal district in downtown Chicago.

At the time, Oliva did not reside in the first municipal district. Under our decision in *Newsom*, Blatt Hasenmiller's choice of venue in the first municipal district within Cook County was not required by the FDCPA but was permissible. While the *Oliva* action was pending, however, we issued our

*Suesz* decision on July 2, 2014. Eight days later, Blatt Hasenmiller voluntarily dismissed the suit against Oliva and refunded the appearance fee that Oliva's attorney had paid.

Later in 2014, Oliva filed this federal lawsuit under the FDCPA alleging that Blatt Hasenmiller had violated the Act's venue provision, § 1692i, by suing him in a venue where he did not reside and had not signed the contract in suit. 185 F. Supp. 3d at 1064. The parties filed cross-motions for summary judgment. The district court granted Blatt Hasenmiller's motion and denied Oliva's motion. The district court held that Blatt Hasenmiller had shown that its violation of the venue provision in § 1692i was the result of a bona fide error in relying on circuit precedent. The court rejected Oliva's argument that *Suesz* should apply to Blatt Hasenmiller's suit against him.[1]

On Oliva's appeal, a panel of this court affirmed. *Oliva v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 825 F.3d 788 (7th Cir. 2016) (*Oliva II*). The panel concluded that the retroactivity holding in *Suesz* should not be applied because Blatt Hasenmiller was entitled to the safe harbor for bona fide mistakes in § 1692k(c). *Id.* at 791–92. The panel also found that the Supreme Court's opinion in *Jerman*, holding that the bona fide error safe harbor in § 1692k(c) did not apply to mistakes of law, did not extend to mistakes of law based on controlling circuit precedent. *Id.* Oliva petitioned for rehearing en banc under Federal Rule of Appellate Procedure 35. He argued that

---

[1] Blatt Hasenmiller had also argued that venue in the first judicial district was proper on the ground that Oliva had signed the relevant contract in that district. The district court did not address that argument, and we leave it for consideration on remand.

the panel decision conflicted with both our earlier en banc decision in *Suesz* and the Supreme Court's decision in *Jerman*. We granted his petition. Because the issues were presented sufficiently in the briefs and opinions under review, we elected not to schedule a further oral argument in this case.

## II. *Venue Under the Fair Debt Collection Practices Act*

The Fair Debt Collection Practices Act seeks "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e) (congressional purposes). One such practice is abusive forum-shopping by debt collectors choosing the venues for lawsuits to collect consumer debts. The Act requires:

> Any debt collector who brings any legal action on a debt against any consumer shall —
>
> (1) in the case of an action to enforce an interest in real property securing the consumer's obligation, bring such action only in a judicial district or similar legal entity in which such real property is located; or
>
> (2) in the case of an action not described in paragraph (1), bring such action only in the judicial district or similar legal entity —
>
>> (A) in which such consumer signed the contract sued upon; or
>>
>> (B) in which such consumer resides at the commencement of the action.

15 U.S.C. § 1692i(a).

Since the debt here was not secured by real property, our focus is on paragraph (a)(2), which requires the debt collector to file a collection suit in a venue where the consumer debtor

either signed the relevant contract or resides. The provision should prevent debt collectors from choosing venues that are inconvenient for the debtor and/or particularly friendly to the debt collector. The Act's venue provision applies even where the debt collector's venue selection is permissible as a matter of state law. *Suesz*, 757 F.3d at 648; *id.* at 653 (Sykes, J., concurring) (as applied to debt collection actions in state court, "§ 1692i must be understood not as a venue rule but as a penalty on debt collectors who use state venue rules in a way that Congress considers unfair or abusive").

III. *FDCPA Venue in the Seventh Circuit*

In the three states in this circuit, almost all state trial courts are organized county by county, so the relevant "judicial district or similar legal entity" under § 1692i is ordinarily a county. The sticky issue has been the meaning of "judicial district or similar legal entity" in counties that divide their small claims courts among court subdivisions that are smaller than the entire counties. These are Cook County, Illinois (Chicago), and Marion County, Indiana (Indianapolis).

In *Newsom*, we held that municipal department districts of the Circuit Court of Cook County were not "judicial districts" under § 1692i(a), and that the relevant "judicial district" for Cook County was the entire county. 76 F.3d at 819. The practical effect of that decision was to allow debt collectors in Cook County to choose freely among the six different municipal department districts, at least as far as the FDCPA was concerned. In the wake of *Newsom*, debt collectors in Cook County could file collection suits in municipal department districts that were distant from the consumers' residence or the location where the relevant contract was signed.

In 2014, however, we revisited the venue issue in a case dealing with the nine township small-claims courts in Marion County, Indiana, in *Suesz*, 757 F.3d 636. In *Suesz*, we overruled *Newsom* and held that a "judicial district or similar legal entity" under § 1692i is "the smallest geographic area that is relevant for determining venue in the court system in which the case is filed." *Id.* at 638. That meant in *Suesz* itself that a collection suit filed in a township other than where the consumer resided or the contract was signed violated the Act.

The reasoning and holding of *Suesz* clearly extend to the municipal department districts in Cook County, Illinois. It appears that collectors of consumer debts in Cook County quickly adapted their practices to comply with *Suesz* after the en banc decision. This appeal concerns FDCPA claims based on collections suits filed before our en banc decision in *Suesz*.[2]

---

[2] The question presented in this appeal has arisen in a number of similar cases in the Northern District of Illinois. All of the district court decisions on point other than *Oliva* have ruled in favor of retroactive application of *Suesz*. See *Oberg v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, No. 14 C 7369 2015 WL 9478213, at *4 (N.D. Ill. Dec. 29, 2015) (Kennelly, J.); *Desfassiaux v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 142 F. Supp. 3d 667, 674 (N.D. Ill. 2015) (Feinerman, J.); *Browne v. John C. Bonewicz, P.C.*, No. 14 CV 6312, 2015 WL 6165033, at *3 (N.D. Ill. Oct. 20, 2015) (Shah, J.); *Rowan v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, No. 14 CV 08923, 2015 WL 5920873, at *6 (N.D. Ill. Oct. 8, 2015) (Chang, J.); *Conroy v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, No. 14 C 6725, 2015 WL 5821642, at *4 (N.D. Ill. Oct. 1, 2015) (Hart, J.); *Portalatin v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 125 F. Supp. 3d 810, 817 (N.D. Ill. 2015) (Kennelly, J.); *Maldanado v. Freedman Anselmo Lindberg, LLC*, Nos. 14 C 6694 et al., 2015 WL 2330213, at *3 (N.D. Ill. May 14, 2015) (Leinenweber, J.). Other similar cases have failed for separate reasons, though, such as the statute of limitations.

IV. *Retroactivity Under Suesz*

In the en banc briefing in *Suesz*, the debt collector argued that it and other debt collectors had been relying on our precedent in *Newsom* to choose preferred venues among the different small claims courts within the county. It argued that if we were to overrule *Newsom*, we should give that decision only prospective effect. We rejected that argument, holding that the new rule adopted in *Suesz* would apply in *Suesz* itself. 757 F.3d at 649–50.

The general rule, we explained, is that judicial decisions are given retroactive effect, unlike legislation, which ordinarily is not. We acknowledged that the Supreme Court has left itself some room to give its rulings in civil cases only prospective effect "to avoid injustice or hardship to civil litigants who have justifiably relied on prior law." *Id.* at 649, quoting *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 110 (1993) (Kennedy, J., concurring in part and concurring in the judgment), quoting in turn *American Trucking Ass'ns v. Smith*, 496 U.S. 167, 199 (1990) (plurality opinion), and endorsing *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971). We were not persuaded to impose a prospective-only rule in *Suesz*. We noted that the Supreme Court had reversed a state court's decision to give a United States Supreme Court decision only prospective effect. *Suesz*, 757 F.3d at 649, citing *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 753–54 (1995). We also observed that a prior decision of one intermediate appellate court does not ordinarily produce the degree of certainty concerning an issue of federal law that might justify a rare prospective-only ruling. We said that a prospective-only ruling would be "impermissible unless the law had been so well settled before the overruling that it had

been unquestionably prudent for the community to rely on the previous legal understanding." *Id*. at 650.

To illustrate the point, we considered a different scenario, one in which we as a circuit court of appeals had continued to follow *Newsom* but the Supreme Court had granted certiorari in *Suesz* and reversed. Neither our prior decision in *Newsom* nor the panel's decision in *Suesz*, we said, would have justified the Supreme Court giving its decision only prospective effect. *Id*. Also, the Supreme Court's FDCPA decisions against debt collectors have not given any sign of applying their holdings only prospectively. See *Jerman*, 559 U.S. 573; *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995) (Act applies to lawyers collecting debts through litigation).

The panel opinion in this case declined to apply the *Suesz* holding on retroactivity. The panel wrote that *Suesz* "did not specify the scope of its retroactivity," but the panel assumed without deciding that the *Suesz* retroactivity holding would apply to the debt collector in this case. *Oliva II*, 825 F.3d at 790–91. The panel in this case then considered the FDCPA safe harbor for good-faith mistakes under § 1692k(c), which had not been argued in *Suesz*.[3] We turn to that rationale next.

---

[3] In the en banc oral argument in *Suesz*, the debt collector was asked why it did not rely on § 1692k(c) to argue for prospective-only application if *Newsom* were to be overruled. Counsel explained, in apparent reference to *Jerman*, that the Supreme Court had previously held that the safe harbor did not apply to good-faith mistakes of law. Since the party in a position to argue the point had not argued it, we did not address *Jerman* in the en banc opinion.

V. *Jerman and Good-Faith Mistakes of Law*

The FDCPA provides a private right of action for persons whose rights under the Act are violated. 15 U.S.C. § 1692k. Remedies include actual damages, statutory damages up to $1000 per violation, and attorney fees. The Act also provides a safe harbor, a defense that bars liability "if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." § 1692k(c). Blatt Hasenmiller has argued, and the district court and panel agreed, that this safe harbor protected it from liability because it relied in good faith upon our precedent in *Newsom* in choosing venue for its collection suit against Oliva.

The Supreme Court decided *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA* to resolve a circuit split as to whether the Act's safe harbor applies to debt collectors' good-faith mistakes of law. 559 U.S. at 580–81. In *Jerman*, the debt collector had sent a notice to the debtor saying that the debt would be assumed to be valid unless she disputed it in writing. For purposes of the Supreme Court litigation, the Court assumed that the debt collector had violated § 1692g by telling the debtor that she would have to dispute the validity of the debt in writing. *Id.* at 580 n.3. The Supreme Court held that § 1692k(c) does not apply to errors of law in interpreting the Act. The Court stated its holding as follows: "We therefore hold that the bona fide error defense in § 1692k(c) does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the requirements of that statute." *Id.* at 604–05.

The panel in this case concluded that *Jerman* did not bar Blatt Hasenmiller's defense under § 1692k(c). The panel read the *Jerman* holding narrowly, as applying only to the debt collector's own mistaken interpretation of the law but not to reliance on a precedent that was later overruled as mistaken. *Oliva II*, 825 F.3d at 792. In other words, a debt collector could rely on a court's, or at least an appellate court's, mistaken interpretation of the Act. The panel also said that even if the distinction between a court's interpretation and a debt collector's interpretation does not hold up, the debt collector's interpretation was not mistaken when it was made. *Id.*

With respect, we do not read *Jerman* so narrowly. We see no indications that the Court intended to allow § 1692k(c) to protect some mistakes of law about the Act but not others. The opinion includes no indication of how courts might distinguish between protected and unprotected mistakes of law, nor do we see a workable line between protected and unprotected mistakes of law.

There are also clear signs in *Jerman* that the Court was reaching all mistaken interpretations of the Act, regardless of how understandable or reasonable they might have been. For example, the *Jerman* dissent argued that the majority's decision would have unworkable consequences for attorneys collecting debts, requiring an attorney to resolve legal ambiguities against her client "even where there is substantial legal authority for a position favoring the client." 559 U.S. at 597, citing *id.* at 619–24 (Kennedy, J., dissenting). The *Jerman* majority was not persuaded to make an exception for mistakes supported by "substantial legal authority." *Id.* at 597. That logic fits this case unless there is a manageable way to distin-

guish between mistakes supported by "controlling" legal au-
thority and those supported by "substantial" legal authority.
We do not see one, and the panel and dissent do not offer one
for purposes of *Jerman* and § 1692k(c). Nor has any other cir-
cuit tried to confine *Jerman* as the panel did here.

Also relevant to the scope of *Jerman*, the Court pointed out
that Congress had included in § 1692k an additional safe har-
bor for a debt collector who seeks and follows an advisory
opinion from the Federal Trade Commission's Bureau of Con-
sumer Protection:

> No provision of this section imposing any liabil-
> ity shall apply to any act done or omitted in
> good faith in conformity with any advisory
> opinion of the Bureau, notwithstanding that af-
> ter such act or omission has occurred, such
> opinion is amended, rescinded, or determined
> by judicial or other authority to be invalid for
> any reason.

§ 1692k(e). The Court found that the inclusion of the safe har-
bor for FTC advice was inconsistent with a broad defense for
good-faith mistakes of law:

> Debt collectors would rarely need to consult the
> FTC if § 1692k(c) were read to offer immunity
> for good-faith reliance on advice from private
> counsel. Indeed, debt collectors might have an
> affirmative incentive not to seek an advisory
> opinion to resolve ambiguity in the law, as re-
> ceipt of such advice would prevent them from
> claiming good-faith immunity for violations

> and would potentially trigger civil penalties for knowing violations under the FTC Act.

559 U.S. at 588. That analysis is surely correct as a practical matter. See also *id.* at 605–06 (Breyer, J., concurring) (emphasizing the safe harbor for FTC advice as solution for legal uncertainty).

*Jerman* recognized the issue it was deciding is important for effective enforcement of the FDCPA. It is important because there is so much room to argue different interpretations of the FDCPA. A broad exception for good-faith legal errors (akin to a qualified immunity defense under 42 U.S.C. § 1983) would allow debt collectors to resolve all legal uncertainty in their own favor, at least as long as they consulted a lawyer. See *Jerman*, 559 U.S. at 601–02. The result would be to give "a competitive advantage to debt collectors who press the boundaries of lawful conduct," inviting a "race to the bottom" driving more conservative collectors out of business and running directly contrary to the overall purpose of the Act. *Id.* at 602.

As we read the *Jerman* opinion, the Court chose to avoid that result by rejecting application of § 1692k(c) to any legal errors concerning the FDCPA. In essence, the Court read the Act as putting the risk of legal uncertainty on debt collectors, giving them incentives to stay well within legal boundaries. And along these lines, it is worth remembering that nothing in *Newsom* or the Act *required* Blatt Hasenmiller to sue in the venue it chose. *Jerman* and our interpretation of § 1692k(c) do

not nullify the statutory defense but confine it to factual and clerical errors. See *Jerman*, 559 U.S. at 587.[4]

We must still acknowledge, of course, that if any mistaken interpretations of the Act were made in good faith, it was in cases like this. Debt collectors in Cook County relied on circuit precedent in believing they could choose freely among the districts within the county in filing debt collection suits. Our colleagues in dissent make that point with strong language. But as we pointed out above and in *Suesz*, suppose the over-ruling of *Newsom* had come not from this court sitting en banc but from the Supreme Court. Such a decision would not have needed to overrule any Supreme Court precedent, and there is no reason to think the Supreme Court would have given such a decision only prospective in effect. See *Suesz*, 757 F.3d at 650. In that situation, the defendant would not be entitled to a safe harbor. We see no reason to distinguish between those two paths to overruling *Newsom*.

The unstated assumption of the dissent is that a judicial decision is "the law." With a statute, however, the controlling law is and always has been the statute itself, as enacted by both houses of Congress and signed by the President. One judge or a panel of judges may or may not understand that text correctly, but the statute remains the law even if judges err. That is why overrulings of earlier statutory decisions, like

---

[4] Blatt Hasenmiller has pointed out that the *Jerman* opinion said it was not addressing the effect of good-faith mistakes about matters of state law. See 559 U.S. at 580 n.4. From the reservation of that question, Blatt Hasenmiller concludes that not all mistakes of law are excluded from the safe harbor. For the reasons in the text, we think the reservation of the state-law issue does not signal a willingness to draw fine lines between different mistakes of law concerning the FDCPA itself.

reversals by the Supreme Court, are retroactive. It is also why it makes sense to think of the defendant's action here as reflecting a mistake of law despite the reliance on admittedly substantial precedent. Defendant was mistaken about the meaning of the statute, and so were the panels in *Newsom* and *Suesz*. The fact that different sets of lawyers, including those with judicial commissions, made a legal error does not make it less a legal error.

Nevertheless, in recognition of the equitable points the defendant makes about its reliance on *Newsom*, it is helpful to recall that the FDCPA provides that, in determining damages for a violation where the safe harbor is not available, the court "shall consider, among other relevant factors … the extent to which such noncompliance was intentional." 15 U.S.C. § 1692(b)(1).

We are aware of one area in the law where reliance on controlling circuit precedent has been given special treatment: an exception from the exclusionary rule under the Fourth Amendment. In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court recognized an exception to the exclusionary rule for Fourth Amendment violations that resulted from police officers' reasonable reliance on facially valid search warrants. In *Davis v. United States*, 564 U.S. 229 (2011), the Supreme Court extended the *Leon* good-faith exception to searches conducted in objectively reasonable reliance on binding appellate precedent. That unusual rule in *Davis* is based on the exclusionary rule's "high cost to both the truth and the public safety," and the absence of offsetting benefits resulting from deterring police misconduct when the police are complying with circuit precedent. *Id.* at 232. The interest

in protecting debt collectors' choices of venue is not at all comparable to the stakes under the exclusionary rule. We see no reason to create a similar rule under the FDCPA, especially in the face of *Jerman*'s rejection of mistakes of law as grounds for the safe harbor under 15 U.S.C. § 1692k(c).

The judgment of the district court is VACATED and the case is REMANDED for further proceedings consistent with this opinion.[5]

---

[5] We do not address here situations in which a debt collector concluded in good faith that the FDCPA *required* it to act in such a way that a court later determined was prohibited.

MANION, *Circuit Judge*, with whom BAUER, FLAUM, and KANNE, *Circuit Judges*, join, dissenting. Today the court announces an unprecedented new rule—one that punishes debt collectors for doing *exactly* what the controlling law explicitly authorizes them to do at the time they do it. The court's inverted new standard effectively eradicates the FDCPA's bona fide error defense. Worse still, by penalizing strict compliance with controlling precedent, the court gravely undermines the rule of law in this circuit and exposes law-abiding citizens to unforeseeable and arbitrary liability in civil proceedings. I respectfully dissent.

## I.

In December 2013, debt collector Blatt Hasenmiller Leibsker & Moore, LLC, filed a collection lawsuit against Ronald Oliva. The suit was filed at the Richard J. Daley Center in downtown Chicago, in the first municipal district of the Circuit Court of Cook County. Oliva resided in Orland Park, Illinois, which is in the fifth municipal district of the Circuit Court of Cook County.

In deciding where to file suit, Blatt relied on our then-controlling precedent of *Newsom v. Friedman*, 76 F.3d 813 (7th Cir. 1996). In *Newsom* we concluded that the Circuit Court of Cook County is a single "judicial district" for purposes of the FDCPA's venue provision, 15 U.S.C. § 1692i, which requires collection suits to be filed in the "judicial district or similar legal entity" where the contract was signed or where the debtor resides. The *Newsom* court unequivocally held that, under § 1692i(a)(2), debt collectors were allowed to file suit in any of the Circuit Court of Cook County's various municipal districts so long as the debtor resided in Cook County or signed the underlying contract there. Oliva resided in Cook

County, so Blatt's decision to file suit in Cook County's first municipal district was lawful under § 1692i as definitively interpreted by *Newsom*. In other words, Blatt's selection of venue was lawful when it occurred.

No one disputes this. And who could? *Newsom* was the settled law of this circuit for nearly eighteen years at the time, and it explicitly authorized Blatt to file suit exactly where it did. Even the court admits that "[u]nder our decision in *Newsom*, Blatt Hasenmiller's choice of venue … was permissible." Nor is there any doubt that *Newsom* was valid while in effect: as we recently recognized, *Newsom* was "good law in this circuit" before it was overruled. *Jackson v. Blitt & Gaines, P.C.*, 833 F.3d 860, 865 (7th Cir. 2016).

In July 2014, while Blatt's lawsuit was still pending, a divided en banc panel of this court overruled *Newsom* in *Suesz v. Med–1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014). The *Suesz* court held that a "judicial district or similar legal entity" under § 1692i is "the smallest geographic area that is relevant for determining venue in the court system in which the case is filed." *Id.* at 638. Under *Suesz*, collection lawsuits governed by § 1692i(a)(2) may no longer be filed in any of the six municipal districts of the Circuit Court of Cook County, but must instead be filed in the particular municipal district where the debtor resides or where the underlying contract was signed. The court in *Suesz* further held that its decision applied retroactively.

Although Blatt's selection of venue complied with the then-governing law of *Newsom*, it did not conform to the new rule retroactively applied by *Suesz*. To comply with the new rule, Blatt dismissed its action against Oliva shortly after *Suesz* was decided. Oliva then brought an FDCPA claim

against Blatt in federal court, alleging that Blatt was retroactively liable for having filed suit in the wrong venue under *Suesz*. The district court granted summary judgment for Blatt on the ground that Blatt was protected from liability under the FDCPA's bona fide error defense. 15 U.S.C. § 1692k(c). That conclusion was correct, and the district court's judgment should be affirmed.

## II.

The FDCPA is not a strict-liability statute. While most infractions result in liability, the Act creates an important exemption for violations resulting from a debt collector's good-faith mistake. The exemption is mandatory, not optional:

> A debt collector *may not be held liable* in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c) (emphasis added).

Blatt easily meets each of these elements. It's undisputed that Blatt's retroactively imposed violation of *Suesz* was unintentional and that Blatt maintained reasonable procedures to avoid any error. It's also undisputed that the retroactive violation resulted from Blatt's good-faith mistake: the mistake of complying with the controlling law of *Newsom* rather than the then-nonexistent rule of *Suesz* that would later be retroactively applied. Indeed, the court concedes that if ever there was a good-faith mistake under the FDCPA, "it was in cases like this." Maj. Op. at 14. Yet the court refuses to draw the only

logical conclusion: Blatt is statutorily exempt from liability because its retroactively imposed violation of the rule announced in *Suesz* was the result of a bona fide error under § 1692k(c).

The court's refusal to give effect to the statute is not justified by its retroactivity ruling in *Suesz*. *Suesz* had nothing to do with the bona fide error defense and made no mention of good-faith mistakes or § 1692k(c). As the original panel in this case stated, *Suesz* may have created a cause of action for retroactive violations, but it did not "retroactively proscribe the application of the bona fide error defense." *Oliva v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 825 F.3d 788, 791 (7th Cir. 2016).

Nor is today's decision supported by the Supreme Court's holding in *Jerman v. Carlisle*, 559 U.S. 573 (2010). The *Jerman* Court held that "the bona fide error defense in § 1692k(c) does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the requirements of that statute." *Id.* at 604–05. Blatt did not incorrectly interpret the FDCPA's legal requirements in failing to follow the then-nonexistent rule of *Suesz*. Quite the contrary. While it was still the law, *Newsom* definitively determined the legal requirements of the FDCPA's venue provision for debt collectors filing suit in Cook County—and Blatt followed *Newsom* to the letter. Blatt therefore correctly interpreted the statute's legal requirements in accordance with the controlling law in effect at the time of its conduct.

Blatt's interpretation was no less correct just because this court later found that *Newsom* was wrongly decided. A court's controlling but mistaken interpretation of a statute is not the same thing as a party's decision to comply with the court's

controlling interpretation. The party may, indeed must, adhere to the court's controlling interpretation even if the party itself correctly interprets the statute and believes that the court's interpretation is wrong. Thus, assuming that the *Newsom* court mistakenly interpreted the statute, its mistaken interpretation cannot be imputed to Blatt. See *Oliva*, 825 F.3d at 792 (noting that Blatt's decision to follow the controlling rule of *Newsom* did "not amount to an independent (and entirely futile) 'interpretation' of that which *Newsom* had already definitively interpreted and handed down as the binding law of this Circuit") (footnote omitted). *Jerman* excludes the bona fide error defense only when the debt collector's violation results from the "*debt collector's* mistaken interpretation" of the legal requirements of the Act. *Jerman*, 576 U.S. at 577 (emphasis added). Because *Blatt* did not mistakenly interpret the statute's legal requirements merely by following the controlling interpretation of *Newsom*, *Jerman*'s exclusion does not apply.

Put simply, Blatt's decision to *follow the controlling law* as it then existed was not a mistake of law, nor was its failure to comply with a rule that did not yet exist but that would one day emerge with retroactive effect. No subsequent change of law—not even a retroactive one—can change that fact. It is not a mistake of law to follow controlling law, even when that law is later overruled.

In sum, Blatt's retroactively imposed violation was the unfortunate result of its good-faith decision to comply with controlling law while ignorant of a future ruling that would one day reach back in time to declare its lawful conduct unlawful by the legal fiction of retroactivity. In hindsight, that decision was mistaken. But it wasn't a mistake of law. Blatt's failure to foresee the retroactive change of law heralded by *Suesz* was a

bona fide error entirely outside Blatt's control. Blatt is there-
fore entitled to exemption from liability under §1692k(c).

### III.

In reaching the opposite conclusion, the court makes a
number of serious mistakes. It repeatedly misrepresents the
original panel's decision; misinterprets both *Jerman* and *Suesz*;
disregards the legal effect of its own binding precedent; runs
afoul of the separation of powers by effectively nullifying a
lawful statutory defense legislated by Congress; and creates
an unprecedented new rule—one that punishes people for
following controlling law—that tramples the most cherished
principles of due process and strikes at the very heart of
American liberty. The most pervasive of these errors is the
misrepresentation of the original panel's decision, so I'll start
there.

### A. The Court Misrepresents the Panel's Decision

The court paints a very different—and very inaccurate—
picture of the original panel's decision. The court begins by
asserting that the panel "declined to apply the *Suesz* holding
on retroactivity." Maj. Op. at 9; see also *id.* at 4. Not so. The
panel explicitly assumed that *Suesz*'s retroactivity did apply
in this case—applied it—and then concluded that the bona
fide error defense excused Blatt from liability for its retroac-
tive violation:

> Although *Suesz* did not specify the scope of its
> retroactivity, we assume without deciding that
> *Suesz*'s holding applies retroactively to Blatt,
> and that Blatt's decision to file suit in the first
> municipal district of the Circuit Court of Cook
> County was a violation of § 1692i as interpreted

> by *Suesz*. … We [] hold that Blatt's violation of §
> 1692i as interpreted by *Suesz* was the result of a
> bona fide error that precludes liability under the
> Act.

*Oliva*, 825 F.3d at 790–92.

The court then launches a litany of mischaracterizations pertaining to the original panel's interpretation of *Jerman*. According to the court, the panel concluded that *Jerman* does "not extend to mistakes of law based on controlling circuit precedent." Maj. Op. at 4. What the original panel actually said is that *Jerman* precludes the bona fide error defense based on a debt collector's mistake of law, but that a debt collector does not make a mistake of law when it *correctly* interprets controlling circuit precedent. See *Oliva*, 825 F.3d at 792 (reciting the holding of *Jerman* verbatim and holding that Blatt's retroactive violation of *Suesz* was "*not* the result of Blatt's mistaken interpretation of the FDCPA"; Blatt's "interpretation was undisputedly *correct*, since [Blatt] relied on *Newsom* to file suit exactly where *Newsom* allowed") (emphasis added).

The court further suggests that the panel read *Jerman* "narrowly … to allow § 1692k(c) to protect some mistakes of law about the Act but not others." Maj. Op. at 11. But that reading isn't just narrow, it's dead wrong. And the original panel never said anything of the sort. See *Oliva*, 825 F.3d at 792. The court then poses a line-drawing problem to critique the "narrow" reading that is of its own making: "nor do we see a workable line between protected and unprotected mistakes of law." Nor do I. Though I do see a line—a bright one in fact— between those violations that result from a debt collector's mistake of law, and those that do not. That's the line drawn

by *Jerman*, and it's the line the original panel applied in this case.

According to the court, the panel also concluded that *Jerman* does not bar the bona fide error defense when a debt collector violates the Act in reliance on "*a precedent* that was later overruled as mistaken." Maj. Op. at 11 (emphasis added). In other words, the court continues, the panel found that the defense still applies to mistakes of law so long as the debt collector relies "on *a court's*, or at least *an appellate court's*, mistaken interpretation of the Act." *Id.* (emphasis added). The panel never made those sweeping statements, which are clearly at odds with *Jerman*. Relying on "a" precedent or "a" judicial decision may very well be a mistake of law—as when the precedent or decision relied upon conflicts with the controlling law in the relevant jurisdiction. That's exactly what happened in *Jerman*: the debt collector mistakenly interpreted the controlling law of the Sixth Circuit by relying on non-controlling precedent from another circuit. By contrast, *correctly* interpreting the controlling law of the relevant jurisdiction is not a mistake of law in that jurisdiction. It's precisely the opposite. The panel didn't say that there's no mistake of law when the debt collector relies on "an appellate court's" conflicting precedent; the panel said that correctly interpreting the *controlling* appellate precedent in the relevant jurisdiction is not a mistake of law.

The court goes on to say, as if the original panel differed, that there are "clear signs in *Jerman* that the Court was reaching all mistaken interpretations of the Act, regardless of how understandable or reasonable they might have been." Maj. Op. at 11. That rather obvious statement might be relevant if the original panel had grossly misinterpreted *Jerman* to mean

that, while good-faith mistaken interpretations aren't protected, *really* good-faith mistaken interpretations are. There's more than a clear sign that *Jerman* doesn't support so flimsy a distinction. And the panel never said it did. The panel didn't say that Blatt's mistake of law should be excused because Blatt understandably relied on controlling law. The panel said that because Blatt understandably relied on controlling law, there was no mistake of law to be excused. See *Oliva*, 825 F.3d at 792 ("Blatt's interpretation was not mistaken when it was made.").

Notably, the court does not quote from the original panel's decision to substantiate any of these mischaracterizations. Nor could it, because the original panel never said the things the court says it said. Today's reversal knocks down a straw man. The original panel's *real* decision concluded that Blatt's good-faith mistake was not a mistake of law because Blatt correctly interpreted (and strictly followed) controlling precedent. That reasoning is not addressed in today's opinion.

**B. The Court Misinterprets *Jerman***

The court also misreads the Supreme Court's holding in *Jerman*. Under *Jerman*, the court says, Blatt "cannot avoid liability for a violation based on its reliance on circuit precedent …." Maj. Op. at 2. But that's not what *Jerman* says. *Jerman* says that debt collectors cannot avoid liability based on their "mistaken interpretation of the legal requirements of the FDCPA." *Jerman*, 559 U.S. at 577. In *Jerman*, the debt collector's reliance on circuit precedent didn't matter because the precedent was from another circuit and wasn't controlling. See *Daubert v. NRA Grp., LLC*, No. 16-3613, 2017 WL 2836808, at *8 (3d Cir. July 3, 2017) (holding that *Jerman* applies "[w]here an issue of law under the FDCPA is *unsettled* by the Supreme Court or a

*precedential decision of the relevant court of appeals*") (emphasis added). But what happens when the circuit precedent being relied on is also the *controlling* determination of the FDCPA's legal requirements in the relevant jurisdiction, and the debt collector's interpretation of those requirements is correct? That's what happened here. When reliance on the law equals compliance with the law, there is no mistake of law. *Jerman* doesn't say otherwise.

The court then notes that the *Jerman* Court rejected a rule that would make an exception for mistakes of law based on a debt collector's good-faith reliance on "substantial legal authority." Maj. Op. at 11. From there, the court contrasts "substantial" legal authority with "controlling" legal authority, and indicates that it doesn't see a manageable way to distinguish reliance on one from reliance on the other. *Id.* at 11–12. Whatever "substantial" authority means in the court's analysis, it can't mean controlling authority, for the court contrasts the two. And if it's not controlling, then it's at best persuasive. So what the court is actually saying is that it sees no way to differentiate controlling legal authority from persuasive legal authority.

That's an astonishing proposition, and certainly not one recognized by the court in *Jerman*. If controlling authority—the only definitive authority that binds with the force of law—can't be readily distinguished from its opposite, then the rule of law is a sham. Here's the difference between the two: controlling authority is the governing, binding law in a given jurisdiction; persuasive authority is not. And here's the upshot: one can correctly interpret persuasive authority and still be mistaken about the relevant controlling authority; but one can't be mistaken about the relevant controlling authority

when he correctly interprets the relevant controlling authority. That's what Blatt did here.

The court also says that *Jerman* puts the "risk of legal uncertainty on debt collectors." Maj. Op. at 13. That's true. But it begs an important question: why is the court punishing Blatt for doing what was *certainly* lawful at the time and place it did it? It seems the court believes that *Jerman*'s idea of risk allocation is to arbitrarily penalize law-abiding debt collectors by saddling them with the consequences of a risk they never assumed.[1]

In essence, the court today reads *Jerman* as excluding the bona fide error defense not only when the debt collector's violation results from its mistaken legal interpretation, but also when it does not. That's not just an expansive reading of *Jerman*. It's a new rule altogether.

## C. The Court Misinterprets *Suesz*

*Suesz* said nothing—not one word—about the bona fide error defense. Not in the main opinion, not in the concurrence, not in the dissents, not even in the footnotes. It is truly remarkable, then, that the court asserts that the question presented in this appeal—whether the bona fide error defense applies to Blatt—was already "decided" in *Suesz*. Maj. Op. at 2. *Suesz* makes no reference to § 1692k(c) or the Supreme

---

[1] Alternatively, if the court believes that law-abiding debt collectors *do* assume the risk of being penalized for strictly following controlling law, then what of debt collectors who choose *not* to follow controlling law? Don't they assume the same risk? After today's decision, even strict compliance with *Suesz* may one day result in ex post facto liability; and when it does, the bona fide error defense won't be there to help.

Court's related decision in *Jerman*.[2] Even a broad search for more generalized terms that might bear some remote connection to today's issue—terms like *mistake*, *error*, *good faith*, *bona fide*, or *unintentional*—comes up dry. The *Suesz* court redetermined the meaning of "judicial district" under § 1692i and applied its ruling retroactively. That's all. *Suesz* presents no obstacle to the mandatory application of the bona fide error defense in today's case.

So then why does the court insist that *Suesz* controls? The confusion stems from the court's conflation of two distinct questions: First, does Blatt's challenged conduct constitute a retroactive violation? And second, does that retroactive violation result in liability? *Suesz* resolved only the first of these questions: Blatt's challenged conduct did not conform to *Suesz*'s new rule, so the conduct is deemed a retroactive violation under *Suesz*. The court said nothing about the second

---

[2] The court notes that the debt collector in *Suesz* may have chosen not to rely on the bona fide error defense out of concern that the defense would be barred by *Jerman*. Maj. Op. at 9 & n.3. Maybe so. But that's because, unlike here, the debt collector's conduct in *Suesz* wasn't authorized by *Newsom*. As the original panel noted, the debt collector in *Suesz* filed suit in Marion County, Indiana, whereas the holding of *Newsom* was plainly "limited to the Circuit Courts of Illinois, and did not extend to the filing of lawsuits in other states." *Oliva*, 825 F.3d at 792 n.2. See also *Newsom*, 76 F.3d at 818–20 (holding only that the Circuit Courts of Illinois, including the Circuit Court of Cook County, are individual judicial districts under § 1692i). Because the scope of *Newsom*'s controlling authority was limited to lawsuits filed in Illinois, the debt collector in *Suesz* could have relied on *Newsom* (as persuasive authority) while still mistakenly interpreting the legal requirements of § 1692i as applied to the courts of Marion County.

question, the resolution of which depends on whether a statutory exemption—such as the bona fide error defense—applies.

According to the court, however, *Suesz*'s retroactivity *also means* that Blatt must be held liable for its retroactive violation. After answering (in the negative) the question whether Blatt "can avoid liability" under the bona fide error defense, the court states that it already "decided this question in *Suesz* when [it] overruled [*Newsom*] and declined … to make that ruling effective only prospectively." Maj. Op. at 2.[3] In the court's view, then, the mere fact of Blatt's retroactive violation under *Suesz* precludes the application of the bona fide error defense.

But if the bona fide error defense applies only when there is no violation, then what good is it? The whole point of the defense is to excuse liability precisely when there *is* a violation—not when there's no violation and no excuse is needed. By holding that the bare fact of a violation precludes the bona fide error defense, the court ensures that the defense will never apply, for the defense *presumes* a violation, and cannot apply without one. Thus, far from precluding the bona fide error defense, *Suesz*'s retroactivity is the essential prerequisite for the defense's availability.

The court's misreading of *Suesz* is also inconsistent with longstanding principles of retroactivity well outside the context of the FDCPA. The mere fact that a law is retroactively

---

[3] Obviously if the ruling were only prospective there would be no backdated violation and hence no need for the bona fide error defense in this case.

applied has *never* meant that every retroactively assessed violation is guaranteed a remedy. See, e.g., *Davis v. United States*, 564 U.S. 229, 243 (2011) (noting that retroactivity and remedy are "separate, analytically distinct issue[s]," and that "the Court has never equated its retroactivity principles with remedial principles") (citations and internal marks omitted). As the original panel explained, *Suesz* may create a cause of action for retroactive violations, but it doesn't guarantee a remedy (in the form of liability for damages) by "retroactively proscrib[ing] the application of the bona fide error defense." *Oliva*, 825 F.3d at 791.[4]

To hold otherwise, as the court does today, is to stretch beyond its breaking point the judicial doctrine of retroactivity. This court has the power to make its rulings retroactive, but it simply cannot, by a mere flick of the judicial wand, retroactively alter objective realities of the past. Try as it might, the court can't change the historical fact that Blatt correctly interpreted the governing law in effect at the time it filed suit.

**D. The Court Disregards the Effect of its Own Controlling Precedent**

---

[4] Along the same lines, the bona fide error defense would still apply in this case if the Supreme Court, rather than this court, had overruled *Newsom* in *Suesz*. If the Court applied the new rule retroactively, it would establish only a "*potential* ground for relief," see *Davis*, 564 U.S. at 243, not an absolute decree of liability in spite of an otherwise available statutory defense.

The court says that Blatt "violated the venue provision of the [FDCPA]," even though Blatt's "choice of venue was permissible" under *Newsom*'s then-controlling interpretation of that same provision. Maj. Op. at 2–3. In doing so, the court draws an implicit functional distinction between two "different" binding legal precepts: the FDCPA's venue provision interpreted by *Newsom*, and *Newsom*'s controlling interpretation of the FDCPA's venue provision. This distinction enables the court to draw an odd conclusion: Blatt correctly interpreted (and did not violate) *Newsom*'s controlling determination of the legal requirements of § 1692i, but incorrectly interpreted (and violated) § 1692i itself. As applied in this case, the distinction doesn't hold up.

While in effect, *Newsom* did not propose a suggested legal interpretation of questionable binding value—*Newsom*'s interpretation, erroneous or not, was the controlling law in this circuit. Blatt's conduct was thus expressly authorized, not just by *Newsom* as distinct from § 1692i, but also by § 1692i as interpreted by *Newsom*. This brings us to a fairly obvious but crucial point: before it was overruled, *Newsom* definitively determined the practical legal requirements of § 1692i as it applied to lawsuits filed in the Circuit Courts of Illinois. Indeed, the court concedes as much when it says that the "practical effect of [*Newsom*] was to allow debt collectors in Cook County to choose freely among the six different municipal districts, at least *as far as the FDCPA was concerned*." Maj. Op. at 6 (emphasis added). Exactly. Under *Newsom*—and as far as the statute itself was concerned—Blatt's conduct was lawful when it occurred.

Similarly, the practical legal scope of § 1692i in this circuit is now determined by our controlling interpretation in *Suesz*.

And the judicial determination of that scope is not only proper but necessary. Section 1692i says only that the debt collector must file suit in a particular *judicial district*. It doesn't define judicial district, much less determine whether a particular geographic area in the United States fits within the definition. Nowhere does the FDCPA use the controlling language of *Suesz* to describe a judicial district. The statute does not state that a "judicial district or similar legal entity" is "the smallest geographic area relevant to venue in the court system in which the case is filed." Yet right now, in this circuit, § 1692i means just that.[5] Lawyers might say that the smallest-geographic-area requirement is mandated by the statute, or that it is mandated by *Suesz*. Practically speaking, either statement would be correct. While *Suesz* remains in effect, there is no functional difference in this circuit between the requirements of § 1692i by itself and the requirements of § 1692i as definitively interpreted by the controlling authority of *Suesz*. And the same was true under *Newsom*. In short, § 1692i sets forth the law, but it doesn't say what the law means in the Seventh Circuit. That's our job (and of course that of the Supreme Court). And as we do our job, the law of this circuit is shaped accordingly.

This is not to say that a statute is identical to the controlling decision that interprets it. There are of course important distinctions, the most obvious of which comes into play when the controlling precedent is overruled based on a renewed examination of its relationship to the text of the statute itself. Nor do I say, as the court claims, that judicial decisions, rather than the statutes they interpret, are "the law" in some

---

[5] This would be the case even if *Suesz* was wrongly decided. A controlling interpretation is no less controlling simply because it's wrong.

theoretical, unqualified sense. See Maj. Op. at 14. Of course "the statute" is "the law." But it's equally obvious that a statute's controlling legal effect is determined, to a greater or lesser extent, by the relevant controlling interpretation of the Supreme Court and the federal courts of appeals.[6] Thus, while the statute itself remains the same, its practical legal requirements can vary—across space in different circuits, or across time in the same circuit. That is precisely what happened here, when this court replaced the old rule of *Newsom* with the new rule of *Suesz*.

Even the estimable Judge Bork, one of history's strongest proponents of judicial restraint, freely acknowledged that judges determine law in this way. Writing about the federal judiciary, Judge Bork candidly states:

> It is of course true that judges to some extent must make law every time they decide a case, but it is a minor, interstitial lawmaking. The ratifiers of the Constitution put in place the walls,

[6] That's why we call binding appellate statutory interpretations "good law" that "controls" the outcome of future cases in the relevant jurisdiction. See *Gacho v. Butler*, 792 F.3d 732, 737 (7th Cir. 2015) ("*Moore* remains good law and is controlling here[.]"); see also *Shalala v. Schaefer*, 509 U.S. 292, 300 (1993) ("*Hudson* remains good law as applied to remands ordered pursuant to sentence six."). It's also why, when overruling a previously controlling decision that mistakenly interpreted a statute or the constitution, we say that the prior decision is "no longer" the law—not that it never was the law. See, e.g., *Mitchell v. Helms*, 530 U.S. 793, 808 (2000) ("*Meek* and *Wolman* are anomalies in our case law. We therefore conclude that they are no longer good law."); *Pearson v. Helman*, 103 F.3d 133 (7th Cir. 1996) ("Although *Alvarez* is no longer good law with respect to § 4B1.1 enhancements . . . ."); see also *Jackson*, 833 F.3d at 865 (*Newsom* was "good law in this circuit" before it was overruled).

> roofs, and beams; judges preserve the major ar-
> chitectural features, adding only filigree."

ROBERT H. BORK, THE TEMPTING OF AMERICA: THE POLITICAL
SEDUCTION OF THE LAW, 5 (1990). Of course, the judge's power
to make law in this way is sharply limited by the separation
of powers. The court today crosses that limit by effectively re-
writing an Act of Congress and nullifying the bona fide error
defense in a case that demonstrates the epitome of a good-
faith mistake. Ironically, the court pretends not to know the
power of its own controlling precedent in *Newsom*, even as it
assumes a power it does not have.

Perhaps federal appellate judges don't typically talk about
their authority to shape and develop the binding practical ef-
fect of federal statutory law in their respective circuits. But in
light of today's extraordinary decision, there's no way around
the topic. Besides, I'm not breaking any new ground here. I'm
just saying what everyone already knows (but what the court
won't acknowledge): before *Suesz*, there was one law in this
circuit; after *Suesz*, another. *Suesz* wasn't a declaration that
*Newsom*'s determination of the FDCPA's venue provision was
void *ab initio*; it was the binding redetermination—right or
wrong—of that provision's legal effect in the Seventh Circuit.

The court's argument to the contrary is self-defeating. The
court states that the "controlling law" is strictly "the statute
itself," as opposed to the definitive interpretation of the stat-
ute by the Supreme Court or the relevant federal court of ap-
peals. As applied to our case, this means that only the FDCPA
itself—not *Suesz*'s interpretation of the FDCPA—controls
with the force of law. Yet the court today also authoritatively
concludes that Blatt violated the FDCPA as interpreted by
*Suesz*—a conclusion that has controlling effect only if *Suesz*'s

interpretation *is* controlling. (Only controlling law is binding, so if the court's decision in *Suesz* is not controlling law, Blatt is not bound by the *Suesz* court's interpretation, and may lawfully rely on its own private interpretation to justify its conduct.) Thus, in concluding that Blatt violated controlling law because it failed to follow the statute as interpreted by *Suesz*, the court necessarily relies on the very premise it denies: that *Suesz*'s interpretation controls with the force of law. By denying the controlling effect of its own legal determinations, the court pulls the rug out from under its own feet.[7]

So let's put to rest the court's notion that Blatt somehow correctly interpreted *Newsom*'s definitive determination of the FDCPA's venue provision (one law) while incorrectly interpreting the FDCPA's venue provision itself (another law). For purposes of determining whether Blatt correctly interpreted controlling law, the two are treated as one and the same. As the court notes, "as far as the FDCPA was concerned," the "*practical effect*" of *Newsom* was to allow Blatt to file suit exactly where it did. Maj. Op. at 6 (emphasis added). Law is a practical reality. And for practical purposes, *Newsom*'s interpretation of § 1692i was the controlling law when Blatt filed suit. In this circuit, there was no other.

---

[7] The court's position also leads to untenable results. If it's true, as the court says, that *Suesz*'s interpretation of the statute is correct and that only the "statute itself" controls, then the statute would *require* noncompliance with a decision from the Supreme Court if the Court overruled *Suesz* and mistakenly replaced it with a conflicting rule. Opening the door to private interpretation of the FDCPA in this way is particularly worrisome because, as the court recognizes, many interpretations are possible. See Maj. Op. at 13 ("[T]here is so much room to argue different interpretations of the FDCPA.").

**E. The Court Effectively Nullifies a Mandatory Statutory Defense**

The court acknowledges that Blatt relied on *Newsom*'s controlling interpretation of § 1692i in good faith. Indeed, the court concedes that if ever a mistake was made in good faith, "it was in cases like this." So if the bona fide error defense does not apply even here, where the debt collector's mistake was the epitome of an unintentional good-faith oversight that was not also a mistake of law, then when does the defense ever apply? The answer is never—or at least that it never has to. Even if the court applies the defense in the future, under today's precedent, it won't have to. Then again, under today's precedent, even the rule announced today is of questionable value, and law-abiding debt collectors would do well to keep in mind that they follow it at their own risk.

**F. The Court Creates an Unprecedented New Rule**

The court suggests that to apply the bona fide error defense in this case would be to create an unusual new rule that doesn't belong in the FDCPA. Such a rule, the court says, would be similar to a far-removed exception to the exclusionary rule under the Fourth Amendment as interpreted by the Supreme Court in *Davis v. United States*, 564 U.S. 229 (2011). Maj. Op. at 15–16. But a comparison with *Davis* shows just the opposite. It is the rejection, not the application, of the bona fide error defense in this case that results in a most unusual new rule.

In *Davis* the Court held that the police should not be sanctioned (through the suppression of evidence under the exclusionary rule) when they obtain evidence in objectively reasonable reliance on binding appellate precedent. Perhaps that

rule is "unusual," as this court now says, in the Fourth Amendment context. But if so, it's only because unlawfully obtained evidence is generally supposed to be suppressed, making the admission of such evidence an exception to the norm. There's nothing unusual, however, about recognizing a similar rule here: that debt collectors should not be sanctioned (through the imposition of damages) when they rely on binding appellate precedent to collect a debt. Indeed, could any rule be more commonplace (or more fundamental) than the rule that a party in a civil suit should not be subjected to liability for following controlling law? The panel didn't create that rule. That rule is the norm—or at least it was.[8]

The same cannot be said of the new rule that the court creates today. Under today's rule, a party in a civil action may be penalized with statutory damages for strictly adhering to controlling law—even when the statute in question explicitly provides a defense for good-faith mistakes. *Davis* does not support that rule, nor do basic principles of due process permit it. What the court today calls the "equitable points" of Blatt's reliance on controlling law, Maj. Op. at 15, are in fact the most rudimentary requirements of constitutional due process.

---

[8] *Davis* is instructive on another point, too. In deciding not to apply the exclusionary rule, the Court reasoned that to sanction the police even though they strictly complied with then-binding appellate precedent (which, as here, was later overruled) would be to convert the exclusionary rule into "a strict-liability regime." *Id.* at 240. Today, by punishing debt collectors under those exact same circumstances, this court effectively converts the FDCPA into a strict-liability statute.

"A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). "This requirement of clarity in regulation is essential to the protections provided by the Due Process Clause of the Fifth Amendment." *Id.* See also *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994) ("Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly[.]"). Blatt had no fair notice that its selection of venue in Cook County would later be retroactively forbidden. Blatt's selection of venue was *expressly authorized* under the controlling law in effect at the time, and no reasonable debt collector in Blatt's position could possibly have known that it would one day be held liable ex post facto for strictly following controlling law.

I'm not sure why the court is bent on punishing debt collectors for following the law. Is the intention to put debt collectors out of business? To allow debtors to refuse to pay their debts with impunity? I can't think of a rule better suited to those ends than the rule the court announces today.

Today's decision also gravely undermines the rule of law by discouraging debt collectors from following this court's controlling precedent. Indeed, the court leaves open the possibility that debt collectors may even be subject to liability for engaging in conduct that controlling precedent not only permits, but *mandates*. The court notes that *Newsom* allowed, but did not require, Blatt to file suit where it did. Yet nowhere does the court reassure us that Blatt would not be liable if *Newsom* had ruled the other way round. Intentional or not, here's the message today's ruling sends to debt collectors:

Think twice before following the controlling law of this circuit. For tomorrow we may change our mind. And you may wish you hadn't.

Today, in an almost surreal inversion of law and logic, the court punishes Blatt for doing *exactly* what the controlling law explicitly authorized Blatt to do at the time it did it. It does so through a fantastical expansion of the (previously) confined judicial doctrine of retroactivity, and in spite of a statutorily mandated bona fide error defense. The court tries to soften the blow by mildly suggesting that Blatt's punishment may be mitigated because it acted in good faith. Small comfort to Blatt. Blatt is being punished for dutifully adhering to controlling law notwithstanding its legal entitlement to a statutory defense. A mere reduction in punishment does nothing to right that wrong.

Not long ago, this court recognized that "[t]he FDCPA was created to prevent abusive debt-collection practices, not to prevent *law-abiding* creditors from collecting on legally enforceable debts." *Jackson*, 833 F.3d at 866 (emphasis added). Sadly, after today's decision, that is no longer true.

## IV.

In Franz Kafka's *The Trial*, Joseph K. was tried and punished for breaking a law he knew nothing about. At no point during the proceedings, or even at the time of his punishment, did the court ever tell poor Joseph precisely what law he had violated. Today this court does Kafka one better. For today the court punishes the defendant, not for breaking a law that was never given, but for following the very law we gave it.

That is not only inconsistent with the FDCPA's bona fide error defense; it is inconsistent with the judicial function and the rule of law.

I dissent.